**Below is the Order of the Court.**

_____
Karen A. Overstreet
U.S. Bankruptcy Judge
**(Dated as of Entered on Docket date above)**

Karen A. Overstreet
Bankruptcy Judge
United States Courthouse
700 Stewart Street, Suite 6301
Seattle, WA 98101
206-370-5330

## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re | Case No.  10-17952 |
| CONSOLIDATED MERIDIAN FUNDS, a/k/a MERIDIAN INVESTORS TRUST, et al. | |
| Debtors. | |
| MARK CALVERT, as liquidating Trustee of MERIDIAN INVESTORS TRUST, et al. | Adv. No.  12-01767 |
| Plaintiffs, | |
| vs. | |
| ZIONS BANCORPORATION, a Utah corporation; THE COMMERCE BANK OF WASHINGTON, N.A., a federally chartered commercial bank, | ORDER ON COMMERCE BANK'S MOTION TO DISMISS |
| Defendants. | |

Order - 1

This matter came before the Court on December 7, 2012, on the motions to dismiss filed by The Commerce Bank of Washington, N.A. ("Commerce Bank") and Zions Bancorporation ("Zions"). After Zions filed its motion to dismiss, the plaintiffs docketed a notice of dismissal without prejudice as to all claims against Zions. Dkt. No. 48. Consequently, the Court heard only the motion to dismiss filed by Commerce Bank (the "Motion") at the hearing. The Motion incorporates portions of the argument made by Zions in its motion, most importantly, the arguments concerning jurisdiction and standing, which arguments are also addressed here.

At the hearing on December 7, 2012, the plaintiff trustee appeared through his counsel, Michael Avenatti, Scott Sims, and Jane Pierson, and Commerce Bank appeared through its counsel, David Lieberworth and Daniel Vecchio. The Court heard oral argument and considered the following pleadings:

> Complaint and Jury Demand (Dkt. No. 1)(the "Complaint")
> Commerce Bank's Motion to Dismiss and Joinder in Zions Motion to Dismiss (Dkt. No. 37);
> Declaration of Lauren Jassny in Support of Commerce Bank Motion to Dismiss (Dkt. No. 39);
> Zions Bancorporation's Motion to Dismiss and Joinder in Commerce Bank Motion to Dismiss (Dkt. No. 40);
> Plaintiff's Response to Motion to Dismiss (Dkt. No. 49); and
> The Commerce Bank of Washington, N.A.'s Reply to Plaintiff's Response to Motion to Dismiss (Dkt. No. 53)

## I.    BACKGROUND

Plaintiffs contend that this adversary proceeding arises from a massive Ponzi scheme perpetrated by Frederick Darren Berg ("Berg"). Berg is a debtor in his own individual bankruptcy proceeding, along with six other related entities. This Court is presiding over 12 bankruptcy cases involving debtors that are/were investment funds and one affiliated entity formerly owned, managed or controlled by Berg. Those debtors have been substantively consolidated into one proceeding referred to hereinafter as the "Meridian Bankruptcy." On June

Order - 2

22, 2011, this Court entered an order confirming a consensual Chapter 11 plan in the Meridian Bankruptcy (the "Plan").  The Plan provides for the creation of the Liquidating Trust for the Substantively Consolidated Meridian Funds, a/k/a/ The Meridian Investors Trust (the "Meridian Investors Trust").  Mark Calvert, the named plaintiff in this adversary proceeding, is acting as the Liquidating Trustee (the "Trustee") of the Meridian Investors Trust, which holds all of the claims of the consolidated bankruptcy estates.

The Trustee, as plaintiff herein, has filed this action on behalf various individuals named in paragraph 2.2 of the Complaint (the "Investor Plaintiffs") who are alleged to have invested in 11 Meridian funds managed by Berg and identified in paragraph 2.1 of the Complaint (the "Meridian Funds").  The Complaint alleges that pursuant to the terms of the Plan, the Investor Plaintiffs have assigned certain claims, including their claims against Commerce Bank, to the Trustee for the purpose of joint pursuit on their behalf.  Alternatively, the Trustee contends that if the assignments are not treated as valid for these proceedings, the Investor Plaintiffs are themselves separate, named plaintiffs herein.

The complaint alleges two causes of action against Commerce Bank:  that Commerce Bank, as the bank used by Berg and the Meridian Funds, aided and abetted Berg's breach of fiduciary duty to the Investor Plaintiffs, and that Commerce Bank aided and abetted a fraud by Berg perpetrated on the Investor Plaintiffs.  Commerce Bank's Motion raises a number of grounds for dismissal of the Complaint which are addressed herein.

## II.    STANDING

Commerce Bank challenges the Trustee's standing to bring the two causes of action under the Complaint on behalf of the Investor Plaintiffs.  Article III limits a federal court's subject matter jurisdiction by requiring that plaintiffs have standing.  *Chandler v. State Farm*

Order - 3

*Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). "Standing addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication." *Id.* (citations omitted). Regardless of which type of standing is at issue, constitutional or prudential, both turn on whether the plaintiff can allege an "injury-in-fact" he or she suffered as a result of the defendant's alleged misconduct. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130 (1992); *Powers v. Ohio*, 499 U.S. 400, 410-11, 111 S.Ct. 1364 (1991). Because standing pertains to a federal court's subject matter jurisdiction, a motion to dismiss for lack of standing is properly brought as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), Fed.R.Civ.P. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). When faced with a Rule 12(b)(1) motion, the plaintiff bears the burden of proving the existence of the court's subject matter jurisdiction. *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).

The Complaint alleges that the Trustee has a valid assignment of the claims of the Investor Plaintiffs against Commerce Bank and that pursuant to his authority under the Plan, he may pursue those claims in this action. Commerce Bank contends that as a matter of law the Trustee cannot assert those claims notwithstanding their assignment to him. Commerce Bank relies primarily on *Williams v. California 1st Bank*, 859 F.2d 664 (9th Cir. 1988). In *Williams*, a Chapter 7 trustee obtained assignments of claims from creditors of the debtor who had purchased investments sold by the debtor, who was alleged to have been operating a Ponzi scheme. The trustee then brought an action similar to the action here against the defendant bank asserting that it had allegedly participated in the debtor's Ponzi scheme. The bank moved to dismiss on the ground that the trustee did not have standing to assert the third party creditor claims. Following *Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416, 92 S. Ct. 1678, 32 L.Ed.2d 195 (1972), the Ninth Circuit Court of Appeals held in *Williams* that the trustee had no

Order - 4

standing. *Caplin* addressed the standing of a trustee under Ch. X of the Bankruptcy Act who brought an action against an indenture trustee on behalf of holders of debentures issued by the debtor.

The Trustee contends that *Williams* and *Caplin* do not apply in this case because his standing derives from the Plan and not solely from the Bankruptcy Code. The order confirming the Plan (the "Confirmation Order") provides that "[t]he assets and liabilities of the Estates shall be pooled and all Claims shall be satisfied from the assets of a single consolidated Liquidating Trust under the control of the Liquidating Trustee." Confirmation Order, ¶ 5, Docket No. 427, Case No. 10-17952. The Liquidating Trust Agreement names Mr. Calvert as the Liquidating Trustee and representative of the estate with all the powers of a trustee as well as the powers under the trust agreement. Confirmation Order, Ex. B. The Trustee is authorized to prosecute what are referred to as "Non-Estate Claims," which by definition include causes of action by individual investors arising from any matter regarding the Meridian Funds against third parties. Plan, Art. I, Sec. B. The Plan specifically authorizes the Trustee to prosecute causes of action related to the Non-Estate Claims and specifically reserves for later enforcement by the Liquidating Trustee all causes of action against "bankers or lenders who aided and abetted, were complicit in or otherwise contributed to the fraudulent activities of the Debtors, Berg or the Berg Entities." Plan, p. 25. Individual investors were required as part of the Plan balloting process to indicate their approval of the Plan and agreement to assign their Non-Estate Claims to the Trustee. *See* Dkt. No. 376 (form of ballot). Thus, the Plan required those investors voting in favor of the Plan to transfer any claims they had against Commerce Bank to the Liquidating Trust and authorized the Trustee to pursue the claims on their behalf. For purposes of Commerce Bank's motion, the Court assumes the Trustee's well-pleaded allegation that he has a

valid assignment of the claims of the Investor Plaintiffs against Commerce Bank.

This Court agrees with the Trustee that neither *Williams* nor *Caplin* dictate the result here. The *Caplin* case stands only for the general proposition that the trustee in bankruptcy does not have standing to assert claims that are not property of the estate. *Williams* builds on that concept by adding that the trustee cannot acquire standing to assert claims that are not property of the estate by taking an assignment of those claims. *Caplin* was decided under the Bankruptcy Act, which has long since been superseded by the Bankruptcy Code, and *Williams* arose in the context of a chapter 7 proceeding where the trustee was relying completely on his powers under the Bankruptcy Code.

Contract principles apply to a plan because it is effectively a new contract between the bankrupt entity and the creditors bound by the plan. See 11 U.S.C. §1141(a); *Hillis Motors, Inc. v. Hawaii Auto. Dealers'* Ass'n, 997 F.2d 581, 588 (9th Cir. 1993); *In re Dow Corning Corp.*, 456 F.3d 668, 676 (6th Cir. 2006). Under a confirmed plan, the liquidating trustee is bound by the terms of the new contract - the plan - and has the duties thereunder. He is not a trustee in the same sense as a trustee operating in the absence of a plan but solely with reference to the rights and duties of a trustee under the Bankruptcy Code. In many cases a post-confirmation plan trustee is vested with broad powers to operate a business and has much more power than a trustee operating a business in Chapter 11.

In the Ninth Circuit, at least one court has concluded that *Williams* should not be applied in certain post-confirmation circumstances like the present case. In *In re AgriBiotech, Inc.*, 319 B.R. 207 (D. Nev. 2004), the trustee under a plan trust brought claims for fraud and negligence against former officers and directors of the debtor. Those claims had been assigned to the trustee by creditors of the debtor who claimed that the defendants had knowingly misrepresented the

Order - 6

debtor's financial condition to them to induce them to deliver products to the debtor. The court rejected the defendants' challenge to the trustee's standing in a detailed and thoughtful opinion which distinguishes *Caplin* and *Williams*. As to *Williams,* the court noted that the creditors there had assigned to the trustee only their right to bring the suit, but not to recover on the claims. In the *AgriBiotech* case, as in the instant case, the creditors had assigned the right to bring the suit, recover on the claims, and distribute any proceeds to creditors pro rata under the plan. This, the *AgriBiotech* court held, made the claims property of the estate. *Id*. at 214.

The Trustee cites to additional cases which support his standing here, including *Grede v. Bank of New York Mellon*, 598 F.3d 899 (7th Cir. 2010) and *Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495 (D. Del. 2012). In *Zazzali*, the confirmed plan created two trusts: one containing the claims of the debtors and one containing claims assigned by the creditors to a trust created under the plan. Zazzali, trustee for the trusts, filed a lawsuit against former lawyers of the debtors who had represented the debtors in connection with their investor solicitations. Without much fanfare, the court concluded that while *Caplin* and *Williams* address the rights of a trustee acting *in* bankruptcy, those cases do not address the rights and powers of a private action trustee acting pursuant to the terms of a confirmed plan of reorganization. The court relied on *Grede*, in which the Third Circuit Court of Appeals held that a trustee of a liquidation trust, created by a confirmed plan of reorganization, may pursue third-party claims that have been assigned to him.

In this case, the Trustee is acting as the court-appointed liquidating trustee under the Plan. In the case of a *Ponzi* scheme, investors have a claim that is particularized as to them and they have the exclusive right to pursue the claims. *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 62 (2d Cir. 1985). The Complaint alleges that the Investor Plaintiffs have assigned their claims against Commerce Bank to the Trustee. The Trustee has the right under

the Plan to bring the suit against Commerce Bank and to distribute any recovery to creditors under the terms of the Plan. Accordingly, the Court concludes that the Trustee has standing to pursue those claims.[1]

## III. SUBJECT MATTER JURISDICTION

Commerce Bank contends that this Court does not have jurisdiction of this matter as either a "core proceeding" or under the Court's "related to" jurisdiction. The Plan provides that the Court shall have "exclusive jurisdiction" after the effective date of the Plan over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 cases or the Plan, including adversary proceedings instituted by the Liquidating Trustee after the effective date, "to the greatest extent permitted by applicable law." Plan, Art. XII. Thus, the Plan acknowledges the outer limit of the Court's jurisdiction, notwithstanding the sweeping Plan language. The outer limit is 28 U.S.C. §1334(b) – simply put, the Plan, by its terms, cannot grant broader jurisdiction than the law allows. Section 1334(b) authorizes the bankruptcy courts to exercise jurisdiction of "all civil proceedings arising under title 11, or arising in or related to cases under title 11."

Neither party argues that the Trustee's causes of action arise under the Bankruptcy Code. Nor do the causes of action arise in the Meridian Bankruptcy such that they are "core" proceedings under 28 U.S.C. §157(b)(2). Instead, the Trustee's causes of action for aiding and abetting a breach of fiduciary duty and a fraud are based solely on state law with reference to alleged improper acts by Commerce Bank which occurred prepetition.[2] Because the Trustee's

---

[1]  Given that the Court finds the Trustee has standing to pursue the claims of the Investor Plaintiffs, it is not necessary to consider the standing of the Individual Investors.

[2]  Although paragraph 2.12 of the Complaint refers to the Bank Secrecy Act, 31 U.S.C. §5311 et seq., the Trustee concedes that the act does not provide a private right of action; instead, the Trustee contends that Commerce Bank's failure to comply with that statute supports the Trustee's fraud claim.

Order - 8

causes of action arise under state law, they are not encompassed in the Court's jurisdiction over matters "arising under title 11" or "arising in" the Meridian Bankruptcy.

The question is whether the claims fall into the broader category of cases over which the Court may exercise jurisdiction, those claims which are "related to" the Meridian Bankruptcy. Both sides agree that the test the Court should employ to answer this question is the so-called "Pacor Test" adopted by the Ninth Circuit in *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1193 (9th Cir. 2005). The test originates with *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), in which the court held that "related to" jurisdiction exists if "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy….An action is related to a bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Pegasus,* 394 F.3d at 1193.

At issue in the *Pegasus* case were tort and contract claims arising under state law and in connection with a settlement agreement which had been approved by the bankruptcy court and incorporated into the terms of the confirmed plan. The liquidating trustee under the plan contended that the defendant had breached the settlement agreement and the plan and committed fraud in the inducement at the time it entered into the plan and settlement agreement. Although the court concluded that "post-confirmation bankruptcy court jurisdiction is necessarily more limited than pre-confirmation jurisdiction, and that the *Pacor* formulation may be somewhat overbroad in the post-confirmation context," it nevertheless concluded that "related-to" jurisdiction was proper because of the "close nexus" between the dispute and the bankruptcy proceedings. *Id.* at 1194. The court adopted the Third Circuit's "close nexus" test because it

"recognizes the limited nature of post-confirmation jurisdiction but retains a certain flexibility, which can be especially important in cases with continuing trusts." *Id.* The nexus in the *Pegasus* case being that the claims and the remedies sought could affect implementation and execution of the plan itself.[3]

In a subsequent case dealing with a post-confirmation breach of a purchase and sale agreement approved by the bankruptcy court and incorporated into a confirmed plan of reorganization, *Battle Ground Plaza, LLC v. Ray (In re Ray),* 624 F.3d 1124 (9th Cir. 2010), the court further clarified its application of the "close nexus" test. In *Ray,* although the purchase and sale agreement was approved by the bankruptcy court, the sale did not close until after plan confirmation. A dispute arose in state court after the bankruptcy case was closed over the buyer's right of first refusal for an adjoining parcel to the property that was sold pursuant to the purchase and sale agreement. The state court "remanded" that action to the bankruptcy court, and, although the bankruptcy court concluded that it had "related to" jurisdiction of the dispute, the Ninth Circuit Court of Appeals reversed, concluding that the action in state court did not have a close nexus to the bankruptcy plan or proceeding. The court reasoned that the breach of contract action could have "existed entirely apart from the bankruptcy proceeding and did not necessarily depend upon resolution of a substantial question of bankruptcy law." *Id.* at 1135. *See also In re Wilshire Courtyard*, 459 B.R. 416, 427 (9th Cir. BAP 2011)(court applies close nexus test to conclude subject matter lacking over dispute between partners of reorganized

---

[3]  The *Pegasus* court contrasted its case with the case of *In re Resorts Int'l, Inc.*, 372 F.3d 154, 170 (3d Cir. 2004), where the court found no jurisdiction over an accounting malpractice action in which there was no need to interpret or construe the plan or the trust agreement provided for in the plan. The malpractice claim in the *Resorts* case, however, was filed almost 7 years after plan confirmation and the claims at issue arose after plan confirmation. The court noted that "it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred." *In re Resorts Int'l, Inc.*, 372 F.3d at 166.

Order - 10

debtor and California Franchise Tax Board where resolution of the dispute would not affect the debtor or the estate).

The Trustee argues that the close nexus test should be limited in application to post-confirmation disputes involving a reorganized debtor and should not be applied in the context of a pure chapter 11 liquidation, citing *Boston Reg'l Med. Cent., Inc. v. Reynolds*, 410 F.3d 100, 105-07 (1st Cir. 2005). In that case, the court held that when a trustee commences litigation designed to marshal the debtor's assets for the benefit of the creditors pursuant to a liquidating plan, "related to" jurisdiction persists undiminished after plan confirmation. The court compared how "related to" jurisdiction might be applied in a case where the debtor emerges from chapter 11 as an operating, reorganized entity, in which the court might be inclined to discourage the debtor's continued resort to the bankruptcy court, to how a court might apply the same doctrine in a case where the debtor is liquidating and what is left is winding up the estate assets and distributing them to creditors. In the latter instance, the court might want to assure that the debtor has an efficient forum in which to wind things up expeditiously. Commerce Bank, on the other hand, relies primarily on *Pegasus* in advancing the "close nexus" test and cites additional cases in the Ninth Circuit which apply that test. *See, e.g., Heller Ehrman LLP v. Gregory Canyon Ltd.*, 461 B.R. 606 (Bankr. N.D. Cal. 2011)(court applied close nexus test to conclude no jurisdiction over liquidating debtor's post-confirmation action to collect a disputed account receivable); *Fed. Home Loan Bank of Chicago v. Banc of America Secs. LLC*, 448 B.R. 517, 524 (C.D. Cal. 2011)(court found related to jurisdiction in securities action by purchaser of mortgage backed securities against sellers where debtor was originator of securities and seller had contractual claim against debtor for reimbursement); *Stichting Pensioenfonds ABP v. Countrywide Fin'l Corp.*, 447 B.R. 302, 309 (C.D. Cal. 2010) (court found related to jurisdiction

based upon close nexus test in removed state court action brought by purchaser of mortgage backed securities against sellers, where sellers had indemnification claim against debtor and post-confirmation plan trustee was responsible for administering the indemnification claim). [4]

This Court is satisfied that the "close nexus" test is the proper test to apply in this case and that the test is satisfied. The Trustee seeks to carry out the provisions of the confirmed Plan by pursuing causes of action that have been assigned to him pursuant to the Liquidating Trust. The Meridian Funds are not continuing in business, so there is no danger that the Court's "related to" jurisdiction will extend into the distant future. This lawsuit was filed by the Trustee promptly after confirmation and in conjunction with many other lawsuits which variously involve the same underlying alleged Ponzi scheme by Berg. All of those lawsuits have been filed in the bankruptcy court pursuant to the terms of the Plan. Retention of this case and other actions by the Trustee in the Bankruptcy Court provides an efficient forum for resolution of the actions and avoids the need for a state court to parse the terms of the Plan, address the standing of the Trustee under the Liquidating Trust, or issue a ruling on the Ponzi scheme and its impact which conflicts with a ruling by this Court. Many of the adversary proceedings filed by the Trustee involve non-core claims like the claims in this case and will ultimately be addressed by final order of the district court, or by jury trial, where applicable, in the district court. Under standard local district court procedures, all of the cases will be assigned to the same district judge, giving the process a more efficient prospect for expeditious determination. Accordingly,

---

[4] Commerce Bank also cites *In re ACI-HDT Supply Co.*, 205 B.R. 231 (9th Cir. BAP 1997). *ACI-HDT* is a 1997 case, however, which predates *Pegasus* and did not involve a liquidating trustee pursuing claims on behalf of creditors under a confirmed plan. Quite the contrary, in that case, the former investors in the debtor brought their own claims as a class action in the state court and fought to keep the claims there.

Order - 12

the Court concludes that it has "related to" subject matter jurisdiction of this action.[5]

## IV.     THE ADEQUACY OF THE COMPLAINT

The balance of the Motion raises grounds for dismissal based upon the inadequacy of the allegations of the Complaint.  In *Ashcroft v. Iqbal*, , the United States Supreme Court held that Rule 8, Fed.R.Civ.P., incorporated into bankruptcy adversary proceedings by Bankruptcy Rule 7008, requires a complaint to include sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Two working principles underlie *Twombly*.  First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.  Second, determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense.

The context of this case is a Ponzi scheme allegedly perpetrated by Berg.   According to the Ninth Circuit Court of Appeals, a "Ponzi scheme is a phony investment plan in which monies paid by later investors are used to pay artificially high returns to the initial investors, with the goal of attracting more investors."  *Alexander v. Compton (In re Bonham)*, 229 F.3d 750, 759 n.1 (9th Cir. 2000).

### A.     Aiding and Abetting Pleading Requirements.

The Trustee alleges two causes of action against Commerce Bank:  that Commerce Bank

---

[5]   Because the Court finds that its subject matter jurisdiction is proper, it is not necessary to address supplemental jurisdiction.

Order - 13

aided and abetted Berg in committing a breach of a fiduciary duty to the Investor Plaintiffs and

that Commerce Bank aided and abetted Berg in committing a fraud on the Investor Plaintiffs.

Both causes of action require sufficient pleading of "aiding and abetting." To succeed on claim

for aiding and abetting, a plaintiff must show that a defendant "knows that the other's conduct

constitutes a breach of duty and gives substantial assistance or encouragement to the other."

*Brashkis v. Hyperion Capital Group, LLC*, No. 3:11-CV-05635, 2011 WL 6130787, at *3 (W.D.

Wash. Dec. 8, 2011) (citing *Wash. Constr., Inc. v. Sterling Sav. Bank,* 163 Wash. App. 1027,

2011 WL 4043579, at * 10 n. 8 (Wash. Ct. App. Sept. 13, 2011); and Restatement (Second) of

Torts § 876(1977)). Washington cases have adopted the formulation of aiding and abetting set

forth in the Restatement (Second) of Torts § 876 (b), which provides that:

> For harm resulting to a third person from the tortious conduct of another,
> one is subject to liability if he
> (a) does a tortious act in concert with the other or pursuant to a common
> design with him, or
> (b) knows that the other's conduct constitutes a breach of duty and gives
> substantial assistance or encouragement to the other so to conduct himself,
> or
> (c) gives substantial assistance to the other in accomplishing a tortious
> result and his own conduct, separately considered, constitutes a breach of
> duty to the third person.

*See Wash. Constr., Inc.*, 2011 WL 4043579, at *10; *Martin v. Abbott Labs.*, 102 Wash.2d 581,

596, 689 P.2d 368 (1984). Thus, under Washington law, to plead a claim for aiding and abetting

a plaintiff must allege (i) the existence of a violation by the primary wrongdoer; (ii) knowledge

of this violation by the aider and abettor; and (iii) that the aider and abettor substantially assisted

in the primary wrong. The Trustee's response to the Motion clarifies that the Trustee is pursuing

a claim of aiding and abetting liability under the second prong of the Restatement (Second) of

Torts § 876 – that is, that Commerce Bank knew of Berg's tortious conduct and substantially

assisted or encouraged Berg's fraud. Commerce Bank contends that the Complaint fails to

contain sufficient allegations as to both knowledge and substantial assistance.

The Trustee makes three arguments concerning the element of actual knowledge: (1) that actual knowledge can be generally averred under FRCP 9(b), which states that "[m]alice, intent, knowledge, and other conditions of mind of a person may be averred generally;" (2) that actual knowledge may be inferred and proven by circumstantial evidence; and (3) that the actual knowledge requirement may be satisfied by showing "conscious avoidance" by the defendant or that the "accused has a general awareness that his role was a part of an overall activity that is improper." *Smith v. First Union Nat. Bank*, No. 00-4485, 2002 WL 31056104, at *2 (S.D. Fla. Aug. 23, 2002) (finding that the Eleventh Circuit has determined that "a person may be held as an aider and abettor ... if the accused party has a general awareness that his role was a part of an overall activity that is improper, and if the accused aider-abettor knowingly and substantially assisted the violation.").

This Court agrees that actual knowledge may be averred generally under Rule 9(b), *Dexia Holdings, Inc. v. Countrywide Fin. Corp.*, No. 2:11-cv-07165, 2012 WL 1798997 (C.D. Cal. Feb. 17, 2012), however, pleading actual knowledge is still subject to the requirement that a plaintiff must state "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Allstate Life Ins. Co. v. Robert W. Baird & Co., Inc.*, 756 F. Supp.2d 1113, 1165 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Moreover, the allegation must be that the defendant had actual knowledge of the primary violation. *See Neilson v. Union Bank of California, N.A.*, 290 F. Supp.2d 1101, 1119 (C.D. Cal. 2003). Where actual knowledge is denied, a plaintiff must come forward with evidentiary facts from which a trier of fact could reasonably infer actual knowledge by a preponderance of the evidence. *Tabak v. State*, 73 Wash. App. 691, 696, 870 P.2d 1014, 1017-18 (1994). Although actual knowledge may be

Order - 15

inferred and proven by circumstantial evidence, *Sloan v. Thompson*, 128 Wash. App. 776, 787, 115 P.3d 1009, 1014 (2005), the allegations of the same must still satisfy the pleading requirements set forth in *Twombly* and *Iqbal*.

With regard to "conscious avoidance" and "general awareness," the Trustee cites only to cases from outside Washington. Although the cases support the Trustee's general proposition that "conscious avoidance" is enough, the cases explain that "conscious avoidance" occurs when "it can almost be said that the defendant actually knew because he or she suspected a fact and realized its probability, but refrained from confirming it in order later to be able to deny knowledge. Conscious avoidance therefore involves a culpable state of mind…." *Kirschner v. Bennett (In re Refco Sec. Litig.),* 759 F. Supp.2d 301, 334 (S.D.N.Y. 2010). Actual knowledge necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act. *Neilson*, 290 F. Supp. 2d at 1119 (citing *Howard v. Superior Court*, 2 Cal. App.4th 745, 749, 3 Cal.Rptr.2d 575 (1992)). Thus, pleading actual knowledge, even under the Trustee's asserted standard, would still require some factual allegation that Commerce Bank *essentially* knew that Berg was engaged in a Ponzi scheme or breached his fiduciary obligations and consciously looked the other way.

The parties also differ as to the standard for adequately alleging substantial assistance. The Trustee argues that the test for "substantial assistance" for a claim of aiding and abetting "is whether the assistance makes it 'easier' for the violation to occur, not whether the assistance was necessary." *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 489-90, 38 P.3d 12, 27-28 ( 2002) (quoting *Camp v. Dema*, 948 F.2d 455, 462 (8th Cir.1991)). Commerce Bank, however, argues that *Wells Fargo* is not the correct standard because it is pre-*Iqbal* and relied on overruled cases regarding 10b-5

Order - 16

securities fraud.  Instead, Commerce Bank cites to, among other cases, *In re Agape Litigation*, where the Court stated that "[c]ourts will find that a defendant provided substantial assistance where: '(1) a defendant affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed'; and (2) 'the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated.'" 681 F. Supp.2d 352, 364 (citing *Rosner v. Bank of China,* No. 06–CV–13562, 2008 WL 5416380, at *5 (S.D.N.Y. Dec. 18, 2008); and *Cromer Fin. Ltd. v. Berger,* 137 F. Supp.2d 452, 470 (S.D.N.Y. 2001)).

The Court concludes from the foregoing authorities that substantial assistance must be pleaded with particularity, *Dexia Holdings, Inc.*, 2012 WL 1798997, at *6, and that the test for substantial assistance articulated in *Agape* should be the guide for testing the sufficiency of the allegations of the Complaint.

### B.    First Cause of Action – Aiding and Abetting Breach of Fiduciary Duty

#### 1. Breach of Fiduciary Duty

Before testing the Trustee's allegations with regard to aiding and abetting, the Court must initially determine whether the Trustee has adequately pled the underlying tort which Commerce Bank is alleged to have aided and abetted.  The first cause of action in the Complaint alleges that Berg breached his fiduciary duty to the Investor Plaintiffs by failing to invest their funds in seller financed real estate contracts, real estate, mortgage backed securities, and hard money loans. Complaint, ¶5.1.  Commerce Bank contends that this cause of action should be dismissed because, as a matter of law, Berg was not acting in a fiduciary relationship with any of the Investor Plaintiffs.  First, Commerce Bank argues that the relationship between the Investor Plaintiffs and Berg—that of investor and manager of an investment company, respectively— was not, as a matter of law, one that could create fiduciary duties owed by Berg directly to those

Order - 17

individuals. *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 807 F. Supp.2d 871, 881 (N.D. Cal. 2011); *West Palm Beach Police Pension Fund v. Collins Capital Low Volatility Performance Fund II, Ltd.*, No. 09-80846, 2010 WL 2949856, at *3 (S.D. Fla. July 26, 2010); *Goldstein v. SEC*, 451 F.3d 873, 879–80 (D.C. Cir. 2006). Second, Commerce Bank argues that none of the accounts it maintained for Berg and his related entities was a trust account, and that instead, all such accounts were mere deposit accounts. Finally, Commerce Bank argues that a claim of fiduciary duty between Berg and the Meridian Funds themselves is barred as a matter of law by the doctrine of *in pari delicto*, which prohibits one party from bringing a claim against another when the claiming party also bears the stigma of culpability. Alternatively, Commerce Bank contends that the Trustee has failed to properly allege Berg's fiduciary relationship.

The doctrine of *in pari delicto* does not apply here. Commerce Bank's argument is that under the doctrine of *in pari delicto*, Berg's bad acts are imputed to MPM and the Meridian Funds because he controlled and dominated those entities. Those entities, the doctrine directs, cannot assert any claims against Commerce Bank because they bear the same culpability. *See Evans v. Luster*, 84 Wash.App. 447, 451–52, 928 P.2d 455, 457-58 (1996) (court refused to allow plaintiff to recover on contract when plaintiff and defendant both knew at the time contract was entered that it violated local land laws). In oral argument, however, the Trustee's counsel confirmed that the Trustee is not asserting any claims against Commerce Bank on behalf of any of the Meridian Funds. The Trustee is asserting only claims assigned to him by the Investor Plaintiffs. Consequently, the doctrine is irrelevant.

Breach of fiduciary duty requires the plaintiff to prove (1) the existence of a duty owed, (2) a breach of that duty, (3) resulting injury, and (4) that the claimed breach proximately caused the injury. *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 110 Wash. App. 412,

Order - 18

433–34, 40 P.3d 1206, 1217-18 (2002).   In Washington, a fiduciary relationship arises in one of two situations: (a) when the nature of the relationship between the parties has historically been considered fiduciary in character, such as that of attorney and client, doctor and patient, and partner and partner (fiduciary relationship as a matter of law), or (b) special circumstances exist in which one party justifiably relies on another to look after the former's financial interests (fiduciary relationship arise in fact).  *Id.  See also Retired Pub. Emps. Council of Washington v. Charles*, 148 Wash.2d 602, 623, 62 P.3d 470, 482 (2003).  The Trustee relies on the "special circumstances" situation and contends that Berg's fiduciary duty stems from, among other things, the fact that he "occupie[d] such a relation to [the Investor Plaintiffs] as to justify the latter in expecting that his interests will be cared for." *Liebergesell v. Evans*, 93 Wash.2d 881, 889-90, 613 P.2d 1170, 1175 (1980).

Commerce Bank argues that there is no fiduciary duty between fund manager and investors because (1) a fund manager owes a duty only to the funds, (2) a fund manager does not tell the investor how to spend his money and is not acting on behalf of the investor, and (3) if any duty is owed to the investor there would be an inevitable conflict of interest for the fund manager (conflict of interest with the investor's interest and fund's interest).  *Goldstein*, 451 F.3d at 879–80 (D.C. Cir. 2006); *Northstar Fin. Advisors, Inc.*, 807 F. Supp. 2d at 881 (N.D. Cal. 2011); *West Palm Beach Police Pension Fund*, 2010 WL 2949856, at *3 (S.D. Fla. July 26, 2010). *Goldstein*, however, upon which Commerce Bank principally relies, dealt only with the interpretation of the term "client" in a Securities and Exchange Commission rule.  The court examined the relationship between investment advisors and clients to address the concern raised in the case that the commission's interpretation improperly suggested the possibility that an investor in a hedge fund could be counted as a client of the fund's advisor, thereby potentially

creating a fiduciary relationship.

In *Goldstein*, the court cited to a Supreme Court decision, *Lowe v. SEC*, 472 U.S. 181, 105 S.Ct. 2557 (1985), wherein the Supreme Court discussed and analyzed the adviser-client relationship under the Investment Adviser's Act of 1940.

> After an extensive discussion of the legislative history of the Advisers Act, the [Supreme] Court held that existence of an advisory relationship depended largely on the character of the advice rendered. Persons engaged in the investment advisory profession "provide personalized advice attuned to a client's concerns." *Lowe,* 472 U.S. at 208), 105 S.Ct. 2557. "[F]iduciary, person-to-person relationships" were "characteristic" of the "investment adviser-client relationship[ ]." *Id.* at 210, 105 S.Ct. 2557. The Court thought it "significant" that the Advisers Act "repeatedly" referred to "clients," which signified to the Court "the kind of fiduciary relationship the Act was designed to regulate." *Id.* at 201 n. 45, 208 n. 54.

*Goldstein,* 451 F.3d at 880. The *Goldstein* court concluded that this type of direct relationship exists between the adviser and the fund, and not between the adviser and the investors in the fund. The adviser is concerned with the fund's performance rather than the individual financial circumstances of each of the fund's investors.

The Trustee is correct that the cases relied on by Commerce Bank address the general rule that an independent investor to a fund owes a fiduciary duty to the fund and not to investors in the funds which it manages. The Trustee distinguishes that situation from the case here, where the Trustee contends there was no independence between Berg, the Meridian Funds and MPM; because Berg controlled all of the entities, it would be absurd to argue that his only fiduciary duty was to himself. The Trustee relies on a law review article, Anita K. Krug, *Moving Beyond the Clamor for "Hedge Fund Regulation": A Reconsideration of "Client" Under the Investment Advisers Act of 1940*, 55 Vill. L. Rev. 661, 673 (2010). The article, however, does not support the Trustee's conclusion that because Berg cannot owe himself a fiduciary duty, he must

therefore owe that duty to the Investor Plaintiffs.  As recognized in the article, and affirmed by the cases cited by Commerce Bank, the general rule remains that an investment adviser owes a fiduciary duty only to the fund it manages.

As previously noted, however, Washington law provides an exception to the general rule that an investment advisor to a fund does not owe a fiduciary duty to investors in the fund.  In *Liebergesell v. Evans*,  the court held that "[i]n some circumstances a fiduciary relationship which allows an individual to relax his guard and repose his trust in another may develop."  93 Wash.2d  at 889-90 (citing *Moon v. Phipps*, 67 Wash.2d 948, 954, 411 P.2d 157, 160 (1966)). Referencing the Restatement of Contracts §472(1)(c), which describes such a fiduciary relationship as one in which one party "occupies such a relation to the other party as to justify the latter in expecting that his interests will be cared for,"  the court concluded that this type of fiduciary relationship can arise in fact (rather than in law), and that its existence depends on the factual proof.  While proof is not required at this stage in the case, the Complaint cannot rely simply on a conclusory allegation that the Investor Plaintiffs trusted Berg therefore a fiduciary relationship between them arose.  *See Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 110 Wash. App. at 433–34  (where the Court found that the testimony of an employee of plaintiff that he trusted a representative of defendant and had confidence in defendant was not sufficient to create a fiduciary relationship);  *Resolution Trust Corp. v. KPMG Peat Marwick*, 844 F.Supp. 431, 436 (N.D.Ill.1994) (placing trust and confidence in a firm as independent advisor was insufficient to create fiduciary duty).

The Complaint alleges that Berg solicited the Investor Plaintiffs to Invest in the Meridian Funds and that "[b]y making investments in the Meridian Funds, Plaintiffs placed trust and confidence in Berg, and relied on his trustworthiness, judgment and representations that he

Order - 21

would select appropriate investment vehicles for their funds." Complaint, ¶ 5.4. Without more, the Complaint falls short of alleging sufficient facts to establish the kind of direct advisory relationship between Berg and the Investor Plaintiffs required by *Goldstein* and *Liebergesell*. It contains no allegation that Berg was "advising" these investors in any way as to how they should invest their funds based upon their individual financial circumstances.

Commerce Bank's final point is that the accounts it maintained for Berg and the Meridian Funds were not trust accounts, but rather, mere deposit accounts. The Complaint contains a conclusory allegation that the Investor Plaintiffs' funds were held in trust. Complaint, ¶¶ 5.4, 5.5. In support of its Motion to Dismiss, Commerce Bank filed the Declaration of Lauren Jassny, the Chief Credit Officer for Commerce Bank. Attached to the declaration are account opening documents for various Meridian and Berg accounts.[6] Ms. Jassny states in paragraph 3 of the declaration that none of the accounts referenced is a trust account. She does not explain, however, why Exhibit G to her declaration, which she states is a form of subscription agreement for Meridian Mortgage Investors, Fund I, LLC, requests a subscriber to that fund to make their check payable to "MMIFI Custodial Account." In addition, although the Complaint refers to specific accounts from which Berg withdrew funds for personal expenses (Complaint, ¶ 5.7), conspicuously absent from the Jassny declaration is any attempt to tie the account opening documents to any of these accounts and the account numbers in the attached exhibits have been completely redacted. Consequently, the Court cannot reach any conclusion about whether the accounts referenced in the Complaint are trust or custodial accounts based upon the Jassny

---

[6] The Trustee objected to the Court's consideration of the declaration and exhibits as being outside the four corners of the Complaint. A court, however, may consider documents outside the complaint on a Rule 12(b)(6) motion where such documents are cited and relied upon in the complaint. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The Complaint references the deposit agreements, therefore the Jassny declaration may be considered by the Court. Complaint, ¶ 5.5.

Order - 22

declaration.   In any case, the designation on the accounts is not necessarily determinative.  *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006) (allegations that bank had actual knowledge that accounts were intended to be trust accounts for client funds were sufficient to support claim of aiding and abetting breach of fiduciary duty despite improper designation of attorney trust account).

The Court finds that the Complaint fails to include sufficient allegations that the accounts from which funds were diverted for Berg's personal use were trust accounts and that the Trustee may not rely solely on a conclusory statement that the accounts were trust accounts.  Instead, the Trustee must allege sufficient facts to support the contention that the accounts were intended to be trust accounts and that Commerce Bank had knowledge of that intent.

### 2. Aiding and Abetting Breach of Fiduciary Duty

As discussed above, in addition to sufficiently alleging the underlying breach of fiduciary duty by Berg, the Complaint must sufficiently allege that Commerce Bank had knowledge of that breach and substantially assisted in the breach.  Commerce Bank contends that *even if* the Trustee can sufficiently allege the underlying breach of fiduciary duty by Berg, the Complaint fails to adequately allege that the bank had actual knowledge of and substantially assisted in Berg's breach of fiduciary duty.

The Complaint alleges that Berg solicited funds from the Investor Plaintiffs, that he held those funds in trust for the Investor Plaintiffs, that he was acting as a fiduciary for these investors, and that Commerce Bank had knowledge of these facts.  Complaint, ¶ 5.5.  The Complaint alleges that the bank's knowledge of these facts arose from "(a) the contents of the deposit agreements with the Meridian Funds and MPM; (b) their [the bank's] relationship and communications with Berg and agents of the Meridian Funds and MPM; (c) the transactions

involving and movement of money among Berg, Meridian Funds, and MPM's accounts; (d) communications with others regarding funds on deposit in these accounts; and (e) Commerce's investment arm, Equity Trust Company, having active Subscription Agreements with the Meridian Funds for the benefit of a number of investors." *Id.* The Complaint goes on to allege that despite this knowledge that the funds in the Commerce Bank accounts were held in trust for the Investor Plaintiffs, the bank nonetheless allowed Berg to do whatever he wanted (i.e. pay personal debts on the Mercer Island home, buy luxury buses unrelated to the Meridian entities, etc.) with the funds.

Commerce Bank contends that the foregoing allegations are insufficient to allege its knowledge that the funds in the accounts it maintained for Meridian and Berg were trust accounts and it relies on a number of cases, including *Lerner v. Fleet Bank, N.A.*, 459 F. 3d 273 (2d Cir. 2006). In *Lerner,* the Second Circuit considered a Ponzi scheme involving an attorney who deposited investor funds into his attorney trust account. The complaint at issue alleged that the defendant banks had knowledge of the attorney fiduciary accounts, knew of numerous overdrafts on that account and knew that the attorney had made transfers from that account to his own personal account. Under New York law, the banks had signed agreements with the Lawyer's Fund for Client Protection of the State of New York requiring that they report overdrafts on attorney trust fund accounts to the fund. Although the court acknowledged the general rule that a bank has no duty to monitor fiduciary accounts in order to safeguard those accounts from fiduciary misappropriation, it concluded that the plaintiffs' allegations that the "banks had actual knowledge that the accounts were intended to be trust accounts for client funds" *even if* those accounts were not properly designated as trust accounts, were sufficient to state a claim for aiding and abetting a breach of fiduciary duty. With regard to substantial

Order - 24

assistance, the court concluded that banks have a duty to safeguard trust funds deposited with them and "when confronted with clear evidence indicating that those funds are being mishandled" they must "take reasonable steps to prevent the misappropriation that an investigation would uncover." *Id.* at 295.

As noted above, the Complaint fails to contain any allegations that Berg had a direct relationship with any of the Investor Plaintiffs as an investment advisor such that as a matter of fact, under *Liebergesell* and other Washington cases, a fiduciary relationship between them could be found. Those allegations would have to include allegations as to the terms of the trust or custodial arrangement, *i.e.,* how the Investor Plaintiffs' funds were to be invested, such as in mortgage backed securities. Assuming the Trustee could cure these defects in his pleading, the Complaint would have to include allegations as to the bank's knowledge of the existence of a direct relationship between Berg and the Investor Plaintiffs, the intent that the funds be held and invested pursuant to trust terms, and how the bank's failure to prevent the use of the funds contrary to the trust terms proximately caused the Investor Plaintiffs' damages. In its current form, however, the Complaint fails to adequately allege that Commerce Bank aided and abetted Berg in the breach of a fiduciary duty to the Investor Plaintiffs.

### C.    Second Cause of Action – Aiding and Abetting Fraud

#### 1. Fraud

The second cause of action in the Complaint alleges fraud; specifically, that Berg knowingly and willfully devised and executed a scheme and artifice to defraud, by obtaining money and property by means of material false and fraudulent pretenses, representations, and promises, including those made to the Investor Plaintiffs in connection with the Meridian Funds. In *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1055 (9th Cir.

2011), the court held that a complaint alleging fraud must comply with both Rules 8(a) and 9(b), and that, in addition to pleading fraud with particularity, the complaint must also plead plausible allegations. That is, the pleading must state "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged]." *Id.* (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 556 (2007)).

Under Washington law, a fraud claim consists of nine separate elements: (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff. *Stiley v. Block*, 130 Wash.2d 486, 505, 925 P.2d 194, 204 (1996). The Trustee argues that these elements are satisfied by Berg's plea agreement, wherein he pled guilty to criminal offenses and admitted he was running a Ponzi scheme that defrauded the investors in the Meridian Funds. The Trustee relies on *Slatkin v. Neilson (In re Slatkin)*, 525 F.3d 805 (9th Cir. 2008), in which the court held that a Ponzi operator's plea agreement is admissible under Federal Rule of Evidence 807, and that a guilty plea conclusively establishes the debtor's fraudulent intent under 11 U.S.C. §548(a)(1)(A). The Trustee argues that the very nature of a Ponzi scheme is such that *every* investor is defrauded as of the date they made their investment. Here, the Ponzi scheme is alleged to have been operative at all relevant times.

Commerce Bank contends that *Slatkin* ought to be limited to the context of a fraudulent conveyance under Section 548, and that the Complaint's allegations concerning Berg's plea agreement satisfy only the fraudulent intent element; that is, that the Trustee must still allege all of the other elements of fraud: a material representation made by Berg that is false, upon which

the Investor Plaintiffs relied, and which proximately caused their damages. In *Slatkin*, the chapter 11 trustee filed an adversary complaint against investors, seeking to avoid as fraudulent, millions of dollars in purported profits the debtor transferred to them during his operation of a Ponzi scheme. The Ninth Circuit Court of Appeals held, among other things, that the plea agreement, wherein the debtor admitted he operated a Ponzi scheme with the actual intent to defraud creditors, conclusively established the fraudulent intent under 11 U.S.C. §548 and California law for purposes of the trustee proving the transfers were fraudulent.

Because *Slatkin* did not deal with a common law fraud claim, and whether the plea agreement would be sufficient to establish all elements of common law fraud, this Court agrees with Commerce Bank that the Trustee may not rely solely on Berg's plea agreement to satisfy all pleading requirements relative to his fraud claim. However, the Court concludes that the Complaint does contain sufficient allegations as to the predicate fraud *by Berg*. The Complaint alleges in Paragraph 5.1 that Berg solicited funds from the Investor Plaintiffs for the purpose of investing those funds in seller financed real estate contracts, real estate, mortgage backed securities, and hard money loans. Paragraph 5.4 alleges that Berg represented to the Investor Plaintiffs that their funds would be invested for their benefit, they relied on his representations and were thereby damaged. Complaint, ¶¶ 5.4, 5.16. The allegations concerning the criminal complaint against Berg and the plea agreement into which he entered are contained in Paragraphs 5.17-5.19 of the Complaint, and they include that Berg admitted that he falsely represented that he was using all investor funds to purchase seller financed real estate contracts, real estate, and mortgage backed securities, and to make hard money loans and that his intent was to defraud the Investor Plaintiffs. These allegations, together with the other allegations noted, are sufficient to satisfy the Trustee's burden of pleading Berg's predicate fraud.

### 2. Aiding and Abetting Fraud

To support his claim that Commerce Bank aided and abetted Berg's fraud, the Trustee must allege that the bank had actual knowledge of and substantially assisted that fraud. The Complaint alleges in paragraph 7.4 that Commerce Bank knew that Berg was operating a Ponzi scheme and paragraph 7.5 alleges that the bank assisted Berg's scheme by (1) following Berg's instructions to open Meridian and personal accounts and transfer funds in and out of the accounts; (2) failing to adequately review the financial activity in the Meridian accounts; (3) failing to report to the Investor Plaintiffs that Berg was using their funds for his personal use; and (4) failing to develop internal policies for reporting suspicious conduct and to implement a due diligence program.

In *Agape Litigation, supra*, the court acknowledged that "[t]he caselaw is clear that opening accounts and approving transfers, even where there is a suspicion of fraudulent activity, does not amount to substantial assistance." *Agape*, 681 F. Supp.2d at 365. *See also Ryan v. Hunton & Williams*, No. 99-CV-5938, 2000 WL 1375265, at *9 (E.D.N.Y. Sept. 20, 2000) (finding that opening accounts and approving transfers does not constitute substantial assistance, even where a bank had ample notice that the accounts may be associated with fraudulent activity). In response to that general rule, the Trustee cites to *In re First Alliance Mortg. Co.* for the proposition that "'ordinary business transactions' a bank performs for a customer can satisfy the substantial assistance element of an aiding and abetting claim if the bank actually knew those transactions were assisting the customer in committing a specific tort. Knowledge is the crucial element." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 994–95 (9th Cir. 2006) (citing *Casey v. U.S. Bank Nat'l Ass'n.*, 127 Cal. App. 4th 1138, 1445, 26 Cal. Rptr.3d 401 (Cal. Ct .App. 2005). Indeed, in that case, the court applied California law to uphold a jury verdict against Lehman

Brothers, Inc. and its subsidiary for aiding and abetting the fraudulent subprime mortgage practices of its borrower, First Alliance Mortgage Company, the originator of the mortgages. Under the facts of the case, however, Lehman was providing more services to First Alliance than the account maintenance services provided by Commerce Bank to Berg and his corporations. Lehman acted as First Alliance's primary lender, funding virtually all of its subprime mortgage lending. A jury found that Lehman had knowledge of First Alliance's fraud from the fact that while it financed First Alliance, it received numerous reports detailing First Alliance's fraudulent practices, and that in internal reports, Lehman officers noted these fraudulent practices. In addition, the jury found that Lehman had a role in furthering that fraud. Lehman argued that although it may have provided significant assistance to First Alliance's *business*, that should be distinguished from providing substantial assistance to a *fraud*. The court disagreed, holding that:

> In a situation where a company's whole business is built like a house of cards on a fraudulent enterprise, this is a distinction without a difference. The jury was not precluded as a matter of law from finding that Lehman substantially assisted First Alliance in its fraud.

*Id.*, 471 F.3d at 995. Importantly, the *First Alliance* case was not about the pleading stage of the case, but about what the plaintiffs had proved in a jury trial.

In *Lerner, supra,* which dealt with the pleadings phase of the case, although the court found the allegations there sufficient to state a claim for breach of fiduciary duty, it found the same allegations insufficient to support a claim for aiding and abetting a fraud, *i.e.,* the actual theft of the investors' funds. The Second Circuit held that the investors' allegations did not give rise to a strong inference that the banks had actual knowledge of the attorney's looting of client funds (the fraud) and concluded that actual knowledge was not pled with enough particularity to survive the heightened pleading requirements of FRCP 9(b). *Lerner* applied New York law to

Order - 29

the claim of aiding and abetting, which law is similar to Washington law.  Similarly, in *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp.2d 1164, 1188 (C.D. Cal. 2011), the court found insufficient pleading of actual knowledge where the complaint merely concluded that the defendant "knew" of the improper conduct without providing any factual basis for the conclusion.

Like the complaint in *Lerner,* the Complaint here includes only a conclusory allegation that Commerce Bank knew that Berg was operating a Ponzi scheme, without alleging any specific facts which would put the bank on notice as to what, when and how it is alleged to have known.  In the plea, Berg admitted that the Ponzi scheme commenced "sometime within the last ten years."  The Complaint does not allege at what point in time Commerce Bank is alleged to have known of the scheme, or what misrepresentations by Berg the bank is alleged to have discovered.  The Complaint does not allege when the Investor Plaintiffs made their investments or whether the investments were made before or after the bank is alleged to have known of Berg's fraud.   If the investments were made before the Commerce Bank accounts were established, the Complaint fails to allege how any action or nonaction on the part of Commerce Bank proximately caused damage to the Investor Plaintiffs.  The Court therefore concludes that the Trustee has failed to sufficiently plead the knowledge element of aiding and abetting.

Assuming the Trustee could sufficiently plead the knowledge element, however, the Court believes that the allegations as to "substantial assistance" also fall short.  While the allegations in the Complaint may satisfy the Trustee's obligation to plead the predicate fraud, additional factual allegations are required to allege that the bank aided and abetted that fraud.[7]

---

[7]   "To comply with Rule 9(b), allegations of fraud [or substantial assistance] must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done

The Complaint alleges only that the bank "had pursued Berg's business dating back to 2001" and that it opened accounts for the Meridian Funds and Berg in 2004. Complaint, ¶ 5.5. Without allegations as to when the Investor Plaintiffs made their investments and allegations as to how their loss was proximately caused by the bank's alleged participation in the transfers described in paragraphs 5.6 and 5.7 of the Complaint, the bank cannot adequately prepare its defense.

### D. RCW 30.22.120 and the Bank Secrecy Act.

As a separate ground for dismissal Commerce Bank relies on RCW 30.22.120, which states that a financial institution is not required to inquire as to either the source or the ownership of any funds received for deposit to an account, or to the proposed application of any payments made from an account, unless there is actual knowledge of the existence of a dispute between depositors, beneficiaries or other persons claiming an interest in funds. *See Sterling Sav. Bank v. Murphy*, 166 Wash.App. 1006, 2012 WL 252581, at *3–4 (Wash. Ct. App. Jan. 26, 2012) (holding that banks do not owe third-party non-customers any duties absent direct relationship or statutory duty). This Court agrees with the Trustee, however, that this statute does not permit a bank to knowingly engage in aiding and abetting a breach of fiduciary duty with regard to an account. RCW 62A.3-307 imposes specific duties on banks where transactions involve fiduciary accounts and instruments and where the bank has knowledge of the fiduciary status of the fiduciary. It has long been the law in Washington that a bank has a duty to notify a beneficiary if it has both knowledge of the fiduciary relationship and knowledge of a breach of fiduciary duty. *Heilig Trust v. First Interstate Bank of Wash.,* 93 Wash. App. 514, 969 P.2d 1082 (1998). This statement of the law is nothing more than a basic restatement of what the Trustee is required to prove in support of his claim against Commerce Bank for aiding and

anything wrong.'" *Bly-Magee v. State of California,* 236 F.3d 1014, 1019 (9th Cir. 2001)(quoting *Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir. 1993)).

Order - 31

abetting a breach of fiduciary duty by Berg.

As for fraud, this Court cannot imagine that RCW 30.22.120 was intended to insulate a bank from actively supporting the commission of a fraud, and Commerce Bank has cited to no case which supports such a broad application of the statute. As stated in *First Alliance,* ordinary banking transactions which a bank performs for its customer can support a claim for aiding and abetting if the bank has knowledge that the transactions are assisting the customer in committing a specific tort. *In re First Alliance Mortg. Co.*, 471 F.3d at 994-95.

Commerce Bank also asks the Court to dismiss any claim against it for violation of the Bank Secrecy Act ("BSA") on the ground that the BSA does not create any private right of action in private parties. *See In re Agape Litigation*, 681 F. Supp.2d at 360-61. The Trustee does not rely on an alleged violation of the BSA as a separate cause of action against the bank; instead, the Trustee contends that the bank's alleged violation of the BSA is just one of a number of failures by the bank which contributed to its alleged substantial assistance in Berg's fraud and breach of fiduciary duty.

## ORDER

NOW, THEREFORE, it is HEREBY ORDERED that the Motion to Dismiss is GRANTED as to both causes of action in the Complaint.

FURTHER ORDERED that the Trustee's motion for leave to amend the Complaint is GRANTED and the Trustee shall file an amended complaint on or before March 25, 2013.

///END OF ORDER///