The Honorable Karen A. Overstreet
Chapter 11
Location: Seattle, Courtroom 7206
Hearing Date: May 3, 2013
Hearing Time: 9:30 a.m.
Response Date: April 24, 2013

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In Re:<br><br>CONSOLIDATED MERIDIAN FUNDS, a/k/a MERIDIAN INVESTORS TRUST, et al.<br><br>Debtors, | Bankruptcy Consolidated<br>Case No. 10-17952-KAO |
| MARK CALVERT, as Liquidating Trustee of the MERIDIAN INVESTORS TRUST, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>ZIONS BANCORPORATION, a Utah corporation; THE COMMERCE BANK OF WASHINGTON, N.A., a federally chartered commercial bank,<br><br>Defendants. | Bankruptcy Adversary No. 12-01767-KAO<br><br>THE COMMERCE BANK OF WASHINGTON, N.A.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT |

## **NOTICE**

PLEASE TAKE NOTICE that The Commerce Bank of Washington, N.A., by and through counsel, has filed a motion to dismiss, pursuant to Fed. R. Bankr. P. 7012(b) and Fed. R. Civ. P. 12(b)(6), Plaintiffs' First Amended Complaint for the failure to state a claim upon

COMMERCE BANK'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT - 1

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

SEA_DOCS:1096357.7
Case 12-01767-TWD    Doc 64    Filed 04/04/13    Ent. 04/04/13 14:58:51    Pg. 1 of 18

which relief can be granted (the "Motion"). The Motion is set for hearing as follows:

| | |
|---|---|
| JUDGE: | The Honorable Karen A. Overstreet |
| PLACE: | U.S. Bankruptcy Court |
| | 700 Stewart St., Courtroom 7206 |
| | Seattle, WA 98101 |
| DATE: | May 3, 2013 |
| TIME: | 9:30 a.m. |

Any party opposing the Motion must serve a written response on the undersigned by April 24, 2013, and file the original response with the Clerk of the United States Bankruptcy Court, Room 6301, 700 Stewart Street, Seattle, Washington. IF NO RESPONSE IS FILED BY THE RESPONSE DATE, the Court may, in its discretion, grant the Motion prior to the hearing WITHOUT FURTHER NOTICE.

## MOTION

### I.
### INTRODUCTION

Defendant the Commerce Bank of Washington, N.A. ("Commerce Bank") hereby moves for a dismissal of Plaintiffs' First Amended Complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, incorporated herein pursuant to Bankruptcy Rule 7012(b). As discussed in detail below, Plaintiffs' amendments do not cure the fundamental defects in the Complaint that this Court dismissed on January 3, 2013. For the reasons more fully explained below, this Court should dismiss the First Amended Complaint ("FAC"), this time with prejudice and put an end to this case before the parties expend the huge amount of resources that will be needed to take it through discovery and trial.

### II.
### BACKGROUND

Commerce Bank described the factual background of this case – as alleged by Plaintiffs – in its motion to dismiss the original complaint, and will not repeat that discussion in any

COMMERCE BANK'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT - 2

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

SEA_DOCS:1096357.7

Case 12-01767-TWD    Doc 64    Filed 04/04/13    Ent. 04/04/13 14:58:51    Pg. 2 of 18

detail here. In brief, Plaintiffs allege[1] that from approximately 2001 to 2010, Darren Berg ("Berg") was the creator, owner and manager of a group of investment funds known as the Meridian Funds. FAC ¶¶ 5.1-5.3. The Meridian Funds "offered and sold promissory notes" to investors, with representations that the money thus raised would be used by the Funds to invest in real-estate related instruments such as seller financed mortgages and hard money loans. FAC ¶ 5.1. Plaintiffs allege that, unbeknownst to the Meridian Funds' note-holders, Berg was running a Ponzi scheme, which eventually collapsed. *Id*. On August 29, 2012, Plaintiffs filed a complaint against Commerce Bank asserting claims for aiding and abetting Berg's alleged breach of fiduciary duty and aiding and abetting Berg's alleged fraud.

Commerce Bank moved to dismiss on October 12, 2012, and a hearing was held on December 7, 2012. On January 3, 2013, this Court dismissed Plaintiffs' original Complaint for failure to meet the threshold for stating a plausible claim under the *Twombly* and *Iqbal* standard. Order on Commerce Bank's Motion to Dismiss, Dkt. 57 (January 3, 2013) (the "Order"). While the Court found that Plaintiffs had pled sufficient facts to support a claim that Berg committed common law fraud, Order at 26-27, it found all of the aspects of Plaintiffs' aiding and abetting allegations fatally deficient under the applicable standards, as set forth in cases such as *In re Agape Litig*., 681 F. Supp. 2d 352 (E.D.N.Y. 2010). Specifically, the Court found that Plaintiffs had failed to plead sufficient facts to support their assertions (a) that Berg owed a fiduciary duty to each of the Plaintiffs, let alone that he breached it, (b) that Commerce Bank had any knowledge of any such supposed fiduciary duty or its alleged breach, (c) that Commerce Bank had knowledge of Berg's fraud, or (d) that Commerce Bank had provided substantial assistance to Berg in connection with his supposed defalcations. *Id*. at 22-23, 28-31. It also found that Plaintiffs had failed to meet the heightened pleading standard of Rule 9(b), applicable to the claim that Commerce Bank had aided and abetted Berg's fraud. *Id*. at 30.

---

[1] By referencing the allegations of the First Amended Complaint in this motion, Commerce Bank does not admit any of them and reserves the right to deny and contest any factual and/or legal assertion contained in the First Amended Complaint.

COMMERCE BANK'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT - 3

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

The Court's dismissal Order also gave the Plaintiffs one more chance to cure the multiple defects in their pleading by allowing them to file an amended complaint by March 25, 2013. *Id.* at 32. Plaintiffs have now amended (*see* Dkt. #62), adding a handful of new allegations that generally speaking fall into one or more of the following three categories:

- That on "information and belief" certain Meridian Fund bank accounts at Commerce Bank were labeled as "custodial," along with conclusory allegations that these accounts were maintained for the benefit of the individual investors, *e.g.*, FAC ¶¶ 5.6-5.9;
- That Commerce Bank knew such accounts were labeled "custodial" and were for the benefit of the individual investors, *e.g.*, FAC ¶¶5.10-5.11; and
- That Commerce Bank became aware of Berg's alleged underlying fraud due to a fax it received "in or around" 2009, FAC ¶ 5.17.

As more fully discussed below, the first two categories essentially are a reworking of Plaintiffs' original, highly generalized allegations concerning purported trust accounts, and fail for many of the same reasons. Perhaps most tellingly, Plaintiffs allege no facts at all to support their conclusory assertion that the investors "were the beneficiaries of the various Funds' custodial accounts." FAC ¶ 5.7. Indeed, some of the allegations of the First Amended Complaint itself are directly at odds with the notion that these accounts were established for the benefit of the investors.

The third category of new allegations – concerning the alleged fax "in or around" 2009 – are of no moment. As explained below, these allegations are entirely insufficient to support an inference that Commerce Bank knew of Berg's alleged malfeasance "no later than 2004," as Plaintiffs claim (FAC ¶¶ 6.7, 7.4), yet Plaintiffs offer no other facts in support of such claim – only conclusions. Further highlighting Plaintiffs' failure to plead specific facts, the fax in question is actually dated July 26, 2010 – weeks after several of the Meridian Funds had been forced into bankruptcy proceedings, and mere days before Berg was arrested. Accordingly, the

COMMERCE BANK'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT - 4

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

SEA_DOCS:1096357.7
Case 12-01767-TWD    Doc 64    Filed 04/04/13    Ent. 04/04/13 14:58:51    Pg. 4 of 18

fax cannot even have put Commerce Bank on notice of any wrongdoing by Berg "no later than 2009," as Plaintiffs allege. FAC ¶ 5.17.

## III.
## ARGUMENT

**A.  Plaintiffs Again Fail to Plead a Claim For Aiding and Abetting Breach of Fiduciary Duty.**

In dismissing Plaintiffs' claim for aiding and abetting breach of fiduciary duty in the original Complaint, this Court held that Plaintiffs had failed to allege "that Berg had a direct relationship with any of the Investor Plaintiffs as an investment advisor such that [under Washington case law] a fiduciary relationship between them could be found." Order at 25. Such allegations, the Court ruled, "would have to include allegations as to the terms of the trust or custodial arrangement." *Id.*  Even if Plaintiffs could allege such facts, they still would be required "to include allegations as to the bank's knowledge of the existence of a direct relationship between Berg and the Investor Plaintiffs, the intent that the funds be held and invested pursuant to trust terms, and how the bank's failure to prevent the use of the funds contrary to the trust terms proximately caused the Investor Plaintiffs' damages." *Id.*  The Court went on to find that Plaintiffs had failed to assert specific facts in support of these basic propositions. That remains true today, even after the filing of the First Amended Complaint.

**1.  The First Amended Complaint Fails to Plead Any Facts Showing the Existence of a Fiduciary Relationship Between Berg and Any of the Investor Plaintiffs.**

In dismissing the original Complaint, this Court held that Plaintiffs could not simply rely on generalized, conclusory allegations that the investors "placed trust and confidence in Berg" in order to plead the existence of a fiduciary duty flowing from Berg to those investors. Order at 21-22.  The Court held that, in order to survive dismissal, Plaintiffs must plead facts sufficient to allege the existence of "the kind of direct advisory relationship between Berg and the Investor Plaintiffs" required by Washington case law. *Id.* at 22 (citing *Goldstein v. SEC*, 451 F.3d 873 (D.C. Cir. 2006); *Liebergesell v. Evans*, 93 Wn.2d 881, 613 P.2d 1170 (1980)).

COMMERCE BANK'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT - 5

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

SEA_DOCS:1096357.7
Case 12-01767-TWD    Doc 64    Filed 04/04/13    Ent. 04/04/13 14:58:51    Pg. 5 of 18

Plaintiffs have not done so. Indeed, the First Amended Complaint adds no allegations whatsoever regarding a "direct" or "advisory" relationship between Berg and *any* of the Investor Plaintiffs (let alone all of them), and Plaintiffs appear to have given up any attempt to allege facts showing such a relationship. Instead, Plaintiffs merely reiterate the same conclusory allegations that, simply by making investments and relying on representations about those investments, Plaintiffs "placed trust and confidence in Berg" and that a fiduciary relationship therefore arose. *See, e.g.*, FAC at ¶ 5.4. As the Court has already ruled, these allegations simply do not plead the existence of an actionable fiduciary duty as a matter of Washington law.[2]

    **2.    The First Amended Complaint's Allegations Concerning "Custodial" Accounts Do Not Establish Any "Trust Terms" and Are Insufficient to Plead the Existence of a Fiduciary Duty Owed By Berg to the Individual Investors.**

Effectively conceding that Berg did not occupy a fiduciary role as a result of his direct interactions with Fund investors, Plaintiffs now allege that "[e]ven if Berg did not owe the investors a fiduciary duty by virtue of Berg being an investment manager for the Funds and by the trust and confidence Plaintiffs placed in Berg," he nevertheless owed the investors a "separate and distinct" fiduciary duty because he allegedly was the custodian of certain "custodial accounts of which [the investors] were beneficiaries." FAC ¶ 5.7. This allegation is, in effect, merely an attempt to resurrect the original Complaint's now-abandoned allegation that the Meridian Funds accounts at Commerce Bank were trust accounts. Such a claim should be rejected for at least four reasons.

First, these allegations merely rehash the same type of conclusory allegations regarding

---

[2] We note that although the Trustee and many (if not all) of these same Investor Plaintiffs have sued Darren Berg personally in two separate proceedings – first in King County Superior Court, and subsequently in this Court – alleging numerous theories of liability, they have never asserted a claim against him for breach of fiduciary duty. *See Calvert, et al. v. Berg, et al.*, No. 11-2-41738-7, Dkt. No. 1 (King County Sup. Ct. Dec. 7, 2011) (complaint); *Calvert, et al. v. Berg, et al.*, Adv. No. 12-01649-KAO, Dkt. No. 1 (Bankr. W.D. Wash. July 30, 2012) (complaint); *Calvert, et al. v. Berg, et al.*, Adv. No. 12-01649-KAO, Dkt. No. 33 (Bankr. W.D. Wash. Oct. 5, 2012) (amended complaint).

COMMERCE BANK'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT - 6

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

SEA_DOCS:1096357.7
Case 12-01767-TWD    Doc 64    Filed 04/04/13    Ent. 04/04/13 14:58:51    Pg. 6 of 18

funds held in trust for investors that the Court already found to be inadequate. In the Order, the Court held that Plaintiffs "may not rely solely on a conclusory statement that the accounts were trust accounts." Order at 23. Instead, Plaintiffs must allege facts showing, among other things, "the terms of the trust or custodial arrangement" and "the intent that the funds be invested pursuant to trust terms." *Id*. at 25. Plaintiffs have not done so. While the First Amended Complaint alleges that at least certain of the Meridian Funds maintained accounts at Commerce Bank that were referred to as "custodial,"[3] Plaintiffs do not plead any facts to indicate what the terms of any "custodial" arrangement were. Plaintiffs allege in a conclusory fashion that a "custodial account is an account that is established for the benefit of a person or persons (the 'beneficiaries'), but operated by another person (the 'custodian')." FAC ¶ 5.6. However, the First Amended Complaint is utterly devoid of any allegations as to what the terms and conditions of these supposed custodial accounts were, or even what account documents or agreements might have contained such terms. In other words, Plaintiffs still fail to allege any "trust terms," as required by the Court, and instead rely entirely on the conclusory "custodial" label. Order at 25.

Second, Plaintiffs plead no facts whatsoever to support their conclusory allegation that the investors "were the beneficiaries" of the accounts labeled as "custodial," or that funds in those accounts were otherwise held in trust for investors. FAC ¶ 5.7. To the contrary, such a contention is directly at odds with the form and circumstances of Plaintiffs' investments in the Meridian Funds. As Plaintiffs themselves allege, "[t]hrough the Meridian Funds, Berg offered and sold promissory notes ('Notes') to investors." FAC ¶ 5.1. Plaintiffs thus implicitly acknowledge that investors in the Meridian Funds did not simply give their money to Berg to hold in trust for them and invest on their behalf in an effort to "grow their investment" or otherwise to act in the role of an investment, advisor, trustee or other fiduciary. Indeed, as

---

[3] Plaintiffs allege on "information and belief" that both a custodial account and an operating account were maintained for "each" of the Meridian Funds, but the specific facts they allege only indicate that custodial accounts were maintained for Funds 1, 5, and 7. *See* FAC ¶ 5.10; Exhibit A.

COMMERCE BANK'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT - 7

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

discussed above, Plaintiffs appear to have abandoned any such allegations in the First Amended Complaint. Instead, the investors purchased Notes issued by the Funds. Those Notes paid fixed rates of interest, which, according to representations by Berg, would be paid "from the cash flows generated by borrower payments and profits generated" by the various real estate instruments in which the Funds would invest. FAC ¶ 5.1. Unlike a typical trust or investment account, any potential profits from the Funds' investments in excess of the fixed rate of interest owed to investors pursuant to their Notes thus accrued to the benefit of the Funds – and by extension, their owner, Berg (*see* FAC ¶ 5.2) – not the investors.

Third, many of Plaintiffs' own allegations regarding the "custodial" accounts in fact contradict the conclusory allegation that the investors were the beneficiaries of those accounts. Specifically, Plaintiffs' Exhibit A purports (among other things) to list each alleged investment in the Meridian Funds made by the individual Plaintiffs.[4] It includes the names of the various bank accounts to which investor payments were deposited, among them the supposed custodial accounts designated as "CB 4348 PRIS FBO MMIF 1," "CB 4399 PRIS FBO MMIF 5," and "CB 4410 PRIS FBO MMIF 7."[5] Each of these abbreviations has an undisputed meaning: "PRIS" refers to PR Investor Services, the third party that was the original "custodian" of the Meridian Funds. *See* FAC ¶ 5.3; *see also* Declaration of Lauren Jassny in Support of Motions to Dismiss by Defendants The Commerce Bank of Washington, N.A. and Zions Bancorporation, Dkt. No. 39 ("Jassny Declaration"), ¶ 3, Ex. C at 16-17 (identifying depositor as PR Investor Services). The "FBO" designation signifies "for the benefit of." FAC ¶ 5.6; *see also, e.g., In re Jensen-Ames*, 2011 WL 1238929, *5 (Bankr. W.D. Wash. Mar. 30, 2011) (unpublished) (noting trust company operating "for the benefit of (e.g., 'fbo')" third party);

---

[4] In addition to deposits allegedly made to accounts at Commerce Bank (indicated by the prefix "CB"), Exhibit A also lists alleged deposits to numerous accounts at other banks – *e.g.*, Charter, FMB, BofA, etc. Plaintiffs do not explain how any of these deposits, many of which occurred before Berg even opened his first accounts with Commerce Bank in November 2004 (FAC ¶ 5.4; Dkt. No. 39), could be relevant to the claims asserted here against Commerce Bank.

[5] By way of comparison, Exhibit A also appears to list the "operating" accounts for at least two of these same Funds, which do not include the "FBO" designation: "CB 4380 MMIF 5;" "CB 4402 MMIF 7."

COMMERCE BANK'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT - 8

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

SEA_DOCS:1096357.7

Case 12-01767-TWD    Doc 64    Filed 04/04/13    Ent. 04/04/13 14:58:51    Pg. 8 of 18

*Travelers Casualty and Surety Co. of America v. Bancorp Bank*, 691 F. Supp. 2d 531, 533 (D. Del. 2009) (accounts "for the benefit of" certain employees designated as "FBO"). Finally, as Plaintiffs allege, designations such as "MMIF 5" and "MMIF 7" refer to Meridian Mortgage Investors Funds 5 and 7. *See* FAC ¶ 5.9 n.3. What all this says, therefore, is that the beneficiary of any of the referenced accounts, if any, was ***not*** the individual investors but the referenced Meridian Fund(s). This is the polar opposite of pleading facts supporting a direct fiduciary obligation by Berg to the individual investors.[6]

Fourth, this same conclusion is further supported by the exhibits to the Jassny Declaration, filed in support of Commerce Bank's motion to dismiss the original Complaint. As the account-opening documents provided at Exhibit C reflect, the signatories on the "custodial" account originally were not Berg at all, but rather were individuals employed by PRIS, the original third party custodian for the Funds. *See* FAC ¶ 5.3. Again, the account names reflect that these accounts were "FBO" the specific Meridian Fund itself, not the investors.[7]

All of this leads to but one plausible set of inferences: Plaintiffs purchased promissory Notes issued by the Meridian Funds. Berg was the manager of those Funds. The custodian for certain of the Funds – originally PRIS, and later MPM – maintained bank accounts on behalf of those Funds into which the money raised from selling Notes was deposited, and from which the Funds would make investments and receive revenue. As Commerce Bank argued in its original motion to dismiss, such a scenario might suggest that Berg, as fund manager, owed a duty to the Funds, but it does not suggest – and in fact is at odds with any suggestion – that he was

---

[6] Nor do Plaintiffs plead specific facts regarding any transfers out of the "custodial" accounts as identified in Exhibit A.

[7] Plaintiffs allege no facts to support their assertion that Berg somehow was the custodian, and therefore a fiduciary, over accounts that were maintained in the name of PRIS until late 2007. Plaintiffs have not alleged that PRIS owed anyone a fiduciary duty, or that PRIS made any unauthorized transfers out of the "custodial" accounts or engaged in any wrongdoing at any time prior to Berg's acquisition of PRIS in 2007. Plaintiffs simply do not explain how Berg could have been acting as the custodian of their money, and a fiduciary, between 2004 and 2007 when he was not even the signatory on the accounts in question.

COMMERCE BANK'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT - 9

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

SEA_DOCS:1096357.7

Case 12-01767-TWD    Doc 64    Filed 04/04/13    Ent. 04/04/13 14:58:51    Pg. 9 of 18

acting as a fiduciary with respect to the <u>investors</u>.

### 3. Plaintiffs Again Fail to Plead Sufficient Facts to Show Actual Knowledge By Commerce Bank.

Even assuming for the sake of argument that Berg did owe a fiduciary duty to the individual investors, Plaintiffs nevertheless fail to allege facts sufficient to show that Commerce Bank possessed actual knowledge of Berg's purported breaches of that duty. As this Court has recognized, the general rule is that "a bank has no duty to monitor fiduciary accounts in order to safeguard those accounts from fiduciary misappropriation." Order at 24 (citing *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006)). Although the *Lerner* court ultimately concluded that the plaintiffs there had adequately alleged the defendant bank's knowledge of the wrongdoer's breach of fiduciary duty, it arrived at that conclusion based on the plaintiff's allegations that the bank had signed agreements requiring it to report overdrafts in the attorney IOLTA accounts in question, yet had declined to do so. 459 F.3d at 279-80. Plaintiffs here make no such allegations regarding Commerce Bank.

The Washington Court of Appeals decision in *Heilig Trust v. First Interstate Bank of Wash.*, 93 Wn. App. 514, 969 P.2d 1082 (1998), cited by this Court in its Order, is instructive here. In *Heilig*, the trustee of a living trust set up by the plaintiff beneficiaries maintained a checking account in the name of the trust at the same bank at which he maintained his own personal checking account. 93 Wn. App. at 516. Over the course of many years, the trustee stole funds from the trust's account, often by writing checks to cash or by writing checks from the trust account that he deposited directly into his own personal account. *Id*. The trustee eventually was caught and pled guilty to first degree theft, and the beneficiaries of the trust then sued the bank under a variety of theories. *Id*. The trial court granted summary judgment for the bank on all claims, finding that the bank "did not have actual knowledge or notice of the theft." *Id*.

The appellate court affirmed, holding that under Washington law, a bank typically has

COMMERCE BANK'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT - 10

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

SEA_DOCS:1096357.7
Case 12-01767-TWD    Doc 64    Filed 04/04/13    Ent. 04/04/13 14:58:51    Pg. 10 of 18

no duty to monitor or report the activities of a fiduciary with respect to a trust account, unless it has "actual knowledge" of both the fiduciary relationship <u>and</u> the breach of duty. *Id*. at 518-19. The trustee's payment of funds from the trust account to his personal account, standing alone, did not give rise to such knowledge as a matter of law. *Id*. The court noted that the trustee was "the only signator on the account, it was a simple checking account, and he was entitled to pay himself for services rendered." *Id*. The court specifically noted the comments to RCW 62A.3-307, discussing a hypothetical in which the president of a company writes a check on the company's account to himself, and then endorses it over to the bank. *Id*. at n.1 (citing U.C.C. Comment 4 to RCW 62A.3-307). In such a situation, there is no notice to the bank of a potential breach of fiduciary duty, because "there is nothing unusual about the transaction. [The company] may have owed [the president] money for salary, reimbursement for expenses incurred for the benefit of [the company], or for any other reason." *Id*. Consequently, absent additional facts such transfers – even out of fiduciary accounts – do not put banks on notice of potential breaches of fiduciary duty. *Id*.

      The same rationale and conclusion apply here. As Plaintiffs acknowledge, Berg was the owner of the Meridian Funds and numerous other companies. It certainly would not be unusual for the owner and operator of such companies to, for example, draw a salary or reimburse himself for company expenses he had incurred. Even if the "custodial" accounts were some form of trust account with the investors as beneficiaries – which they were not – Plaintiffs have not alleged any facts to indicate that Commerce Bank was under a duty to monitor Berg's activity with respect to those accounts, or that any transfers to or from those accounts by Berg would have raised any particular suspicions. As the *Lerner* court noted, a bank "has the right to presume that the fiduciary will apply the funds to their proper purposes under the trust." 459 F.3d at 287; *see also In re Meridian Asset Mgmt., Inc.*, 296 B.R. 243, 264 (Bankr. N.D. Fla. 2003) (dismissing claim for aiding and abetting breach of fiduciary duty against bank and noting that even in trust accounts, "a bank is not bound to supervise the use or the application

COMMERCE BANK'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT - 11

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

SEA_DOCS:1096357.7
Case 12-01767-TWD    Doc 64    Filed 04/04/13    Ent. 04/04/13 14:58:51    Pg. 11 of 18

which a fiduciary depositor makes of trust funds, and is not liable for any misapplication merely because the funds are identified as trust fund monies."). In short, Plaintiffs have pled no facts to suggest that Commerce Bank actually knew that such funds were being put to an inappropriate use.

B. **Plaintiffs Again Fail to Plead a Claim For Aiding and Abetting Fraud.**

    1. **The Court's Order and the Deficiencies of Plaintiffs' Continuing to Rely on Highly Generalized and Conclusory Allegations.**

The First Amended Complaint is similarly deficient with respect to Plaintiffs' claim for aiding and abetting fraud, for many of the same reasons discussed above. This Court previously held that Plaintiffs had failed to allege the "actual knowledge" of Berg's fraud that would be required to sustain such a claim, holding that the original Complaint "include[d] only a conclusory allegation that Commerce Bank knew Berg was operating a Ponzi scheme, without alleging any specific facts which would put the bank on notice as to what, when, and how it is alleged to have known." Order at 30. The Court further held that Berg's plea agreement stated only that his alleged fraud "commenced sometime within the last ten years," but that Plaintiffs did not allege "at what time Commerce Bank is alleged to have known of the scheme, or what misrepresentations by Berg the bank is alleged to have discovered." *Id*. (internal quotations omitted). The Court also held that, even if Plaintiffs could have alleged sufficient facts to show actual knowledge, they nevertheless had failed to plead the required "substantial assistance." Order at 30. The Court noted the general rule that "opening accounts and approving transfers, even where there is suspicion of fraudulent activity, does not amount to substantial assistance." *Id*. at 28 (quoting *Agape*, 681 F. Supp.2d at 265 (internal quotations omitted)).

Despite having had nearly three months to amend their pleading, Plaintiffs have not remedied either shortcoming found by this Court's Order. In fact, Plaintiffs now concede that Commerce Bank may not have had actual knowledge of Berg's scheme, as they expressly

COMMERCE BANK'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT - 12

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

SEA_DOCS:1096357.7

Case 12-01767-TWD    Doc 64    Filed 04/04/13    Ent. 04/04/13 14:58:51    Pg. 12 of 18

allege that "[e]ven if Commerce did not have actual knowledge that Berg was running a Ponzi scheme, it had knowledge, at minimum, that Berg was defrauding investors by making false representations to them in connection with their investments." FAC ¶ 5.15. Plaintiffs do not allege any particular facts, however, to show what those representations were, to whom they were made, how they were false, or when and how Commerce Bank is alleged to have known about them.

In addition to the generalized allegations this Court already has found to be inadequate, Plaintiffs merely add further general allegations that Commerce Bank knew about Berg's defalcations because it had received certain offering documents in which representations were made, and because it received "confirmation requests from Moss Adams." *Id*. Such allegations are wholly insufficient – there are no facts alleged to show how, when, or why Commerce Bank could have known that any particular representation made by Berg was false, and no allegation to suggest that a confirmation request by Moss Adams would indicate anything other than the fact that Moss Adams was conducting an audit. Plaintiffs' failure to plead any such facts is fatal to the First Amended Complaint.

**2. The Supposed 2009 Fax Does Not Support Timely Commerce Bank Knowledge.**

Indeed, aside from the allegations concerning "custodial" accounts, which are insufficient for the reasons discussed above, the only new factual allegation in the First Amended Complaint concerning Commerce Bank's alleged knowledge of Berg's fraud is the allegation made "on information and belief" that Commerce Bank learned "in or about 2009" that Berg was forging account statements for the Meridian Real Estate Opportunity Fund II. FAC ¶ 5.17. Plaintiffs base this contention solely on the alleged receipt of a fax "in or around that time" from Thomas Opsahl of Capstone Financial, "who was asking whether an account statement was authentic." *Id*. This allegation fails to meet Plaintiffs' pleading burden for at least two reasons.

COMMERCE BANK'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT - 13

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

SEA_DOCS:1096357.7
Case 12-01767-TWD    Doc 64    Filed 04/04/13    Ent. 04/04/13 14:58:51    Pg. 13 of 18

First, Plaintiffs make no attempt to explain how the fax, allegedly received "in or around" some indeterminate point in 2009, could have provided Commerce Bank with actual knowledge of Berg's alleged fraud or breach of fiduciary duty "no later than 2004," as Plaintiffs claim. FAC ¶¶ 6.7, 7.4. Even assuming for the sake of argument that Commerce Bank did receive such a fax "in or around" 2009, it simply cannot support the inference that Commerce Bank therefore actually knew, years earlier, that Berg allegedly had been perpetrating a fraudulent scheme throughout his time as a Commerce Bank customer. Further, even if the alleged fax had arrived years earlier, the allegations as to its contents are so vague as to fall well short of the requisite pleading of facts establishing actual knowledge. *See Agape*, 681 F. Supp. 2d at 362 (dismissing aiding and abetting complaint where allegations of "red flags" that may have given bank "cause for concern" did not support an inference that defendant bank actually knew and was "complicit" in fraudulent scheme).

Second, this allegation appears to be based on a significant error as to the date of the fax in question. The subject fax, attached to the accompanying Declaration of David Lieberworth in Support of The Commerce Bank of Washington, N.A.'s Motion to Dismiss First Amended Complaint ("Lieberworth Declaration") at Exhibit A, is in fact not dated in 2009 at all.[8] Instead, it is dated July 26, ***2010***. This was weeks *after* several of the Meridian Funds had been forced into bankruptcy, and mere days before Berg was arrested.[9] No matter how favorably one looks at the facts, and taking all presumptions in Plaintiffs' favor, it would simply not have been physically possible for Commerce Bank to have done anything at this late date that would have had any impact on any of the Plaintiffs. To say the least, this sort of allegation cannot

---

[8] While a motion under Rule 12(b)(6) typically is decided solely on the allegations in the complaint, a motion also may rely on the contents of documents referenced extensively in the complaint or documents on which plaintiff's claims rely. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Here, Plaintiffs allege the contents of the fax and rely on its existence and date in order to establish Commerce Bank's knowledge of Berg's alleged breach of fiduciary duty and fraud. *See* FAC ¶ 5.17. Commerce Bank therefore is entitled to rely on it in its motion, and the Court may consider their contents as true. *Ritchie*, 342 F.3d 903 at 908.

[9] Counsel for Commerce Bank brought this problem to the attention of Plaintiffs' counsel by means of a letter dated March 26, 2013. The correspondence on this subject is attached to the Lieberworth Declaration as Exhibits A and B.

COMMERCE BANK'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT - 14

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

SEA_DOCS:1096357.7

Case 12-01767-TWD    Doc 64    Filed 04/04/13    Ent. 04/04/13 14:58:51    Pg. 14 of 18

support a showing of actual knowledge sufficient to sustain Plaintiffs' claims.[10]

### 3. The Remaining New Allegation Does Not Support Substantial Assistance by Commerce Bank.

The only new allegation in the First Amended Complaint that is conceivably relevant to "substantial assistance" is the generalized assertion, made on information and belief, that Commerce Bank "suggested at times" that Berg transfer money from a Meridian Fund account to another account in order to cover an overdraft. FAC ¶ 1.7. Plaintiffs do not identify who at Commerce Bank made such a suggestion, or when, or regarding which account, or any other particularized facts as required. *Agape*, 681 F. Supp. 2d at 364-65; Order at 30-31.

### C. Plaintiffs Fail to Plead Facts Showing Causation or Damages.

The First Amended Complaint should be dismissed for the additional, independent reason that Plaintiffs have failed to plead sufficient facts to support their conclusory allegations that Commerce Bank's actions proximately caused harm to any of the individual investors. As the Court noted in the Order, Plaintiffs' original Complaint failed to plead the "substantial assistance" prong of its aiding and abetting claims in part because it failed to plead such facts, holding that "[w]ithout allegations as to when the Investor Plaintiffs made their investments and allegations as to how their loss was proximately caused by the bank's alleged participation in the transfers described in paragraphs 5.6 and 5.7 of the Complaint, the bank cannot adequately prepare its defense." Order at 31.

Plaintiffs have failed to cure this deficiency. The only factual allegations in the First Amended Complaint concerning this issue appear in Exhibit A, which as described above purports to list the dates and amounts of each Plaintiff's investments in the Meridian Funds, and the account to which that initial payment was made. This list is inadequate to plead causation and damages, however, for at least four reasons. First, Exhibit A includes investors

---

[10] Indeed, the juxtaposition of the First Amended Complaint's ambiguous allegation that the fax was received "in or around" 2009 with the actual date of the fax – July 26, 2010 – serves as a perfect illustration of the need for plaintiffs to plead particularized facts in support of such claims. Here, Plaintiffs have not done so, and that failure is fatal to their claims.

COMMERCE BANK'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT - 15

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

SEA_DOCS:1096357.7

Case 12-01767-TWD    Doc 64    Filed 04/04/13    Ent. 04/04/13 14:58:51    Pg. 15 of 18

who purchased their Notes as early as 2001 – at least three years before Berg allegedly became a customer of Commerce Bank (FAC ¶ 5.4) – yet fails to explain how Commerce Bank's actions could have harmed any of those investors. Second, as noted above in footnote 3, *supra*, Plaintiffs also identify deposits allegedly made not with Commerce Bank at all, but with accounts at other banks; Plaintiffs do not attempt to explain how Commerce Bank could have harmed individuals in connection with those deposits. Third, Exhibit A also fails to demonstrate how investors who purchased their Notes prior to December 22, 2006 – the date of the first alleged problematic transfer identified by Plaintiffs (FAC ¶ 5.13.1) – could have been harmed by Commerce Bank's alleged acts. Finally, Exhibit A also fails to state whether or when any investor redeemed his or her Notes, or whether and when any investor received interest payments on those Notes, making it impossible to determine whether and to what extent those investors suffered actionable losses.

### D. The First Amended Complaint Should Be Dismissed With Prejudice.

When the Court issued its January 3, 2013 Order, it gave Plaintiffs almost three months to cure the original complaint's many deficiencies. They have not done so, and further amendment would be futile. With respect, it is time to put this matter to an end and remove the threat of extraordinary discovery and the burdens and expenses it will necessarily entail. In similar circumstances, where a plaintiff has been given ample opportunity to cure pleading defects and has not done so, courts have not hesitated to dismiss cases with prejudice. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (affirming dismissal with prejudice where amendments had failed to correct deficiencies previously identified by District Court's dismissal order); *Iowa Public Employees Retirement Sys. v. Deloitte & Touche*, __ F. Supp. 2d __, 2013 WL 245845, *20 (S.D.N.Y. Jan. 23, 2013) (dismissing claims for aiding and abetting with prejudice where plaintiffs failed to allege facts supporting defendant's actual knowledge of underlying misdeeds). We ask this Court to follow those cases and dismiss with prejudice here.

COMMERCE BANK'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT - 16

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

SEA_DOCS:1096357.7

Case 12-01767-TWD    Doc 64    Filed 04/04/13    Ent. 04/04/13 14:58:51    Pg. 16 of 18

## IV. CONCLUSION

Plaintiffs' First Amended Complaint fails to cure the deficiencies identified in this Court's Order dismissing the original complaint, and relies solely on the addition of conclusory and self-contradictory allegations that fail as a matter of law. The First Amended Complaint should be dismissed with prejudice.

Dated this 4th day of April, 2013.

GARVEY SCHUBERT BARER

By s/David Lieberworth
Charles C. Robinson, WSBA # 15394
David Lieberworth, WSBA # 9329
Tyler Arnold, WSBA # 43129
Daniel J. Vecchio, WSBA # 44632

Attorneys for Defendant The Commerce Bank of Washington, N.A.

COMMERCE BANK'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT - 17

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

SEA_DOCS:1096357.7
Case 12-01767-TWD    Doc 64    Filed 04/04/13    Ent. 04/04/13 14:58:51    Pg. 17 of 18

**CERTIFICATE OF SERVICE**

I hereby certify that on April 4, 2013, I caused to be electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which causes parties who are registered ECF participants to be served by electronic means.

Dated this 4th day of April, 2013, at Seattle, Washington.

GARVEY SCHUBERT BARER


By /s/David Lieberworth
    David Lieberworth

COMMERCE BANK'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT - 18

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

SEA_DOCS:1096357.7
Case 12-01767-TWD    Doc 64    Filed 04/04/13    Ent. 04/04/13 14:58:51    Pg. 18 of 18