The Honorable Karen A. Overstreet
Chapter 11
Location: Seattle, Courtroom 7206
Hearing Date: May 3, 2013
Hearing Time: 9:30 a.m.
Response Date: April 24, 2013

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In Re:<br><br>CONSOLIDATED MERIDIAN FUNDS, a/k/a MERIDIAN INVESTORS TRUST, et al.<br><br>Debtors, | Bankruptcy Consolidated Case No. 10-17952-KAO |
| MARK CALVERT, as Liquidating Trustee of the MERIDIAN INVESTORS TRUST, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>ZIONS BANCORPORATION, a Utah corporation; THE COMMERCE BANK OF WASHINGTON, N.A., a federally chartered commercial bank,<br><br>Defendants. | Bankruptcy Adversary No. 12-01767-KAO<br><br>THE COMMERCE BANK OF WASHINGTON, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT |

## I. INTRODUCTION

In their First Amended Complaint ("FAC"), Plaintiffs now eschew the words "trust account" and have replaced them with the words "custodial account." According to Plaintiffs' Opposition to the Commerce Bank of Washington, N.A.'s Motion to Dismiss (the "Opposition"

THE COMMERCE BANK OF WASHINGTON, N.A.'S REPLY IN
SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT - 1

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

SEA_DOCS:1099460.4
Case 12-01767-TWD    Doc 67    Filed 04/30/13    Ent. 04/30/13 15:26:04    Pg. 1 of 13

or "Opp."), this single switch in verbiage is enough to support their otherwise conclusory allegations that: (1) the Meridian accounts held funds in some manner of trust arrangement, the terms of which are not alleged; (2) the individual purchasers of promissory notes from Meridian were the beneficiaries of such trust arrangements; (3) Berg was a fiduciary with respect to those investors, despite Plaintiffs' tacit admission that no special relationship of trust and confidence existed between Berg and those individuals; (4) under the terms of this unpled fiduciary arrangement, any payments out of those accounts for anything other than investing in real estate vehicles must have been a breach of duty; and (5) Commerce Bank had actual knowledge of all of this and intentionally and substantially assisted Berg in his malfeasance.

All this is more weight than a single word change can bear.[1] As set forth in Commerce Bank's opening brief and below, the First Amended Complaint does not meet the pleading requirements of *Twombly* and *Iqbal* and must be dismissed.

## II.
## ARGUMENT

As Commerce Bank explained in its Motion, and as the Court held in its Order, Plaintiffs must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Order at 13. A complaint must allege facts giving rise to "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 680. Where the well-pleaded factual allegations of a complaint are "merely consistent with" a defendant's liability, the complaint "stops short of the line between possibility and plausibility of 'entitlement to relief,'" and must be dismissed. *Twombly*, 550 U.S. at 557. Here, this means that Plaintiffs must plead actual facts – not conclusions, possibilities, speculation, or multiple inferences – showing that Commerce Bank <u>actually knew</u> that Berg was committing fraud or

---

[1] Plaintiffs' Opposition also relies on claims that are unsupported by the actual allegations in the FAC itself. For example, Plaintiffs claim to have alleged that Berg "dominated and controlled" PR Investor Services even before he purchased it in 2007 (Opp. at 11); that they have alleged facts showing that money was transferred out of accounts labeled as "custodial" (Opp. at 7); and that they have alleged the terms of the "custodial" accounts (Opp. at 5). The FAC does not plead any facts to support such bare conclusions.

THE COMMERCE BANK OF WASHINGTON, N.A.'S REPLY IN
SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT - 2

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

SEA_DOCS:1099460.4
Case 12-01767-TWD    Doc 67    Filed 04/30/13    Ent. 04/30/13 15:26:04    Pg. 2 of 13

breach of fiduciary duty, and substantially assisted his commission of those torts. *See* Order at 15; *Lawrence v. Bank of America, N.A.*, 455 Fed. Appx. 904, 906 (11th Cir. 2012); *In re Agape Litig.*, 681 F. Supp. 2d 352, 361-62 (E.D.N.Y. 2010). The FAC fails to meet this test.

A. **The FAC Fails to Plead Facts to Support the Allegation That Berg Owed or Breached a Fiduciary Duty to the Individual Investors.**

1. **Plaintiffs Concede That They Have Not Pled Facts to Show a Relationship of Trust And Confidence Between Berg and Any Individual Investor.**

In its Motion, Commerce Bank noted that Plaintiffs had failed to allege specific facts supporting the existence of "the kind of direct advisory relationship between Berg and the Investor Plaintiffs" necessary to give rise to a fiduciary duty under Washington law. Mot. At 5 (citing Order at 22). Plaintiffs do not contend otherwise in the Opposition. Instead, they respond only by stating that they "recognize the Court's Prior Order and have not re-briefed that issue here." Opp. at 5 n.3. Plaintiffs thus have abandoned any claims based on the alleged existence of a fiduciary duty arising out of the "trust and confidence" the individual investors allegedly placed in Berg, and the Court should dismiss those claims with prejudice.

2. **Plaintiffs' Conclusory Allegations That Certain Bank Accounts Were Labeled As "Custodial" Are Insufficient to Plead the Existence of a Fiduciary Duty Owed By Berg to the Individual Investors.**

Plaintiffs now claim that Berg owed a fiduciary duty to the individual investors on the sole basis that some of the Meridian bank accounts at Commerce Bank were labeled as "custodial." Even Plaintiffs acknowledge – as did the Court in its Order – that "the designation on the accounts is not necessarily determinative" of the terms of those accounts. Opp. at 10 (citing Order at 23). Yet, a designation is all that the FAC and the Opposition have to offer. While the Opposition refers to FAC assertions that some of the Meridian accounts were labeled as "custodial," it never identifies any <u>facts</u> supporting what that label meant, what the terms of those accounts were, or what legal implications flowed as a result. The Opposition thus fails to address FAC's most fundamental flaw, for at least three reasons.

First, the Opposition does not identify a single <u>fact</u> alleged in the FAC that explains

THE COMMERCE BANK OF WASHINGTON, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT - 3

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

SEA_DOCS:1099460.4
Case 12-01767-TWD    Doc 67    Filed 04/30/13    Ent. 04/30/13 15:26:04    Pg. 3 of 13

what the use of the word "custodial" in the description of the accounts meant, either as to the form of the account or as to its relationship to the individual investors. To the contrary, as noted in the Motion, the only facts Plaintiffs have alleged – the names of the accounts, and the identity of the account-holders – suggest that the individual investors were not the beneficiaries of such accounts at all.[2] Nor, beyond reliance on the word "custodial," do Plaintiffs provide any facts to support the conclusion that the label "custodial" means that those accounts held money for the benefit of the individual investors, and that Berg as the account-holder (at least beginning in late 2007) acted as a fiduciary with respect to those investors.

Second, in absence of any facts regarding the nature and terms of the alleged "custodial" accounts, Plaintiffs have at best pled only legal conclusions – *i.e.*, that any account bearing the "custodial" moniker is in effect a trust account, and that the custodian acts as a fiduciary. For this rather sweeping proposition, Plaintiffs cite not a single authority. More important, the whole point of recent pleading cases is that mere legal conclusions, unsupported by facts, are insufficient to meet Plaintiffs' pleading burden. *Iqbal*, 556 U.S. at 678.

Third, in fact, even the law does not support the broad definition of "custodial" for which Plaintiffs contend. Certainly there is no fixed, statutory definition. While Washington's Financial Institution Individual Deposit Act lists the types of accounts that a bank may establish, that statute neither identifies nor defines a "custodial" account. *See* RCW 30.22.050.

Nor do the cases on which Plaintiffs primarily rely. For example, *In re Marriage of Petrie*, 105 Wn. App. 268, 19 P.3d 443 (2001), did not address or define "custodial" accounts in general terms at all, as Plaintiffs seem to suggest. Rather, the "custodial" accounts at issue in *Petrie* were specific, statutorily-defined entities created pursuant to the Washington Uniform

---

[2] Plaintiffs' only apparent response to this argument is to complain that such issues speak to the "merits" of their claims and are best left for discovery. Opp. at 10-11. This misses the point, namely, that to survive a motion to dismiss a plaintiff must allege real facts which support the "merits" of the claims being alleged. Here, the only facts regarding the "custodial" accounts that Plaintiffs allege in the FAC are the names of the accounts. Those allegations do not support – and even appear to undermine – Plaintiffs' conclusions as to the form, terms, and beneficiaries (if any) of the accounts.

THE COMMERCE BANK OF WASHINGTON, N.A.'S REPLY IN
SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT - 4

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

SEA_DOCS:1099460.4
Case 12-01767-TWD    Doc 67    Filed 04/30/13    Ent. 04/30/13 15:26:04    Pg. 4 of 13

Gifts to Minors Act ("WUGMA"), RCW 11.114.090.[3] 105 Wn. App. at 271. Even a cursory review of that statute – upon which *Petrie* relied – shows how far from the mark the case is. "Custodial" property is a specifically defined term under WUGMA, which governs the specific circumstances under which such property may be created and used *for the benefit of minors*. RCW 11.114.090. The defendant in *Petrie* was the trustee of a trust for his two minor children established pursuant to a divorce settlement, and also had created "custodial" accounts for his children specifically pursuant to the WUGMA. 105 Wn. App. at 271. Plaintiffs here have not alleged the existence of any such statutorily-defined "custodial" account. Nor do they allege that the individual investors' purchases of promissory notes issued by Meridian somehow fell within the ambit of the Uniform Gifts to Minors Act.

For similar reasons, Plaintiffs' attempt to analogize their claim for aiding and abetting breach of fiduciary duty to those at issue in the *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006), is misplaced. In *Lerner* – decided before *Twombly* and *Iqbal* – the plaintiffs had not simply alleged that the accounts at issue bore a particular name. To the contrary, they alleged that the accounts were statutorily-defined attorney IOLA accounts, established pursuant to New York state law. 459 F.3d at 280 n.1. The governing statute provided specific guidance as to the *terms* of those accounts, including what types of funds could be deposited in them and what could be done with the interest earned on those funds.[4] *Id*. That is, the statute created specific terms and conditions that set forth in detail what the obligations associated with such accounts were. This is precisely the sort of information that Plaintiffs have failed to plead, as they have alleged no such terms here, statutory or otherwise.

Indeed, it is difficult to understand why the Plaintiffs rely upon *Lerner*, as the allegations of "trust" terms alone still were not enough to support the *Lerner* plaintiffs' claim.

---

[3] WUGMA has since been renamed the Washington Uniform Transfers to Minors Act. *See* RCW 11.114 *et seq*.
[4] It also should be noted that it is unclear from the opinion what facts the *Lerner* plaintiffs pled in support of their allegation that the bank had actual knowledge of Schick's status as a fiduciary, and whether such allegations would have passed muster post-*Twombly*.

THE COMMERCE BANK OF WASHINGTON, N.A.'S REPLY IN
SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT - 5

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

SEA_DOCS:1099460.4
Case 12-01767-TWD    Doc 67    Filed 04/30/13    Ent. 04/30/13 15:26:04    Pg. 5 of 13

As the court there noted, "a depository bank has no duty to monitor fiduciary accounts . . . in order to safeguard funds in those accounts from fiduciary misappropriation." *Id.* at 287 (internal quotations omitted). Rather, banks "[have] the right to presume that the fiduciary will apply the funds to their proper purposes." *Id.* What saved the *Lerner* plaintiffs' claims from dismissal was that they were <u>also</u> able to allege (among other things): (1) that the bank had agreed *specifically* to report any overdrafts on the accounts in question, *id.* at 279-80; (2) that a senior vice president of the bank discussed the overdrafts with the Ponzi operator (Schick) and advised him on how to return problem checks in such a way as to avoid triggering the reporting requirements, *id.* at 282; (3) that other bank executives later met with Schick and decided collectively not to report the overdrafts as required, *id.*; and (4) that a bank executive affirmatively represented to one of Schick's creditors that a bounced check had "nothing to do with Schick," that the check was returned simply due to a back-office mix-up, and represented that there were sufficient funds in the IOLA account to cover the check, *id.* at 282-3. Plaintiffs do not allege any such facts here.

Plaintiffs' reliance on *Simi Management Corp. v. Bank of America Corp.*, 2012 WL 1997232 (N.D. Cal. June 4, 2012), is similarly unavailing. In *Simi*, the plaintiffs alleged facts not at all present here, including that the defendant bank (1) intentionally falsified cashier's checks in order to conceal the identity of the purchaser; (2) allowed the primary wrongdoer to cash company checks with only his single signature, when two were required; (3) issued misleading bank statements designed to hide the issuance and payees of company cashier's checks; and (4) urged other banks to complete transactions those banks had called to report as suspicious. *Id.* at *1-*3.

**3. Plaintiffs Do Not Allege Facts Sufficient to Plead That Berg Breached Any Purported Fiduciary Duty.**

Plaintiffs argue that Commerce Bank "does <u>not</u> challenge the adequacy of Plaintiffs' allegations of Berg's breach of fiduciary duty." Opp. at 8 (emphasis in original). That is

THE COMMERCE BANK OF WASHINGTON, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT - 6

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

SEA_DOCS:1099460.4
Case 12-01767-TWD    Doc 67    Filed 04/30/13    Ent. 04/30/13 15:26:04    Pg. 6 of 13

incorrect. For one thing, as explained in the Motion, the absence of allegations sufficient to show the existence of Berg's purported fiduciary duty per force demonstrate that there can be no proper pleading of any breach. Nor does Plaintiffs' invocation of the word "custodial" as a talisman change this, even if it were to hint at fiduciary possibilities. For, to show a violation of duty, there must be <u>facts</u> which support the existence of specific terms defining the fiduciary relationship's metes and bounds, the exceeding of which creates the asserted violation. As noted above, the FAC is barren of any such specifics, which again precludes any assertion of breach. *See* Mot. at 6-8, 11-12.

This was one of the points of the Motion's discussion of *Heilig Trust v. First Interstate Bank of Washington*, 93 Wn. App. 514, 969 P.2d 1082 (1998), which remains on point despite Plaintiffs' attempt to distinguish it. Plaintiffs contend that, "in stark contrast to *Heilig*, Plaintiffs allege each Fund had a *custodial* account at Defendant, not just simple checking accounts." Opp. at 13. Plaintiffs also argue that unlike the defendant trustee in *Heilig*, Berg was not entitled to pay himself a salary, or even if he was, he was not authorized to pay it out of the "custodial" accounts. *Id*. Yet, an examination of both *Heilig* and the FAC demonstrates that these supposed distinctions cannot withstand scrutiny.

First, the "custodial accounts" at issue here – just like in *Heilig* – <u>were both checking accounts</u>. This is reflected by the very account-opening documents on which Plaintiffs relied in the original complaint. *See, e.g.*, Jassny Decl. ¶ 3, Ex. C ("Account Type" identified as "Business Checking")[5]. In *Heilig*, the account at issue was a checking account <u>and</u> a trust account, set up in the name of a living trust of which the defendant was trustee. 93 Wn. App. at 516. Nevertheless, the fact that the trustee made numerous cash withdrawals out of the trust

---

[5] We note that Plaintiffs attempt to characterize many of the arguments in the Motion as concerning the "merits" of the action, and therefore argue that they are not germane on a motion to dismiss, but simultaneously fault Commerce Bank for not submitting a second Jassny Declaration with additional account documents. Opp. at 11 n.7. Plaintiffs cannot have it both ways, and such protestations are of no moment: Plaintiffs' failure to plead facts supporting their claims is amply demonstrated by the FAC itself and the documents of record in this action, including the account opening documents attached to the Jassny Declaration and on which the original complaint relied.

THE COMMERCE BANK OF WASHINGTON, N.A.'S REPLY IN
SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT - 7

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

SEA_DOCS:1099460.4
Case 12-01767-TWD    Doc 67    Filed 04/30/13    Ent. 04/30/13 15:26:04    Pg. 7 of 13

accounts, and transferred money from the trust account to his own personal account, were not enough to put the bank on notice that he might be breaching his duty as an admitted trustee and fiduciary. *Id*. at 518-19.

Second, Plaintiffs' numerous *ad hoc* arguments – to the effect that, unlike the *Heilig* trustee, Berg was not entitled to pay himself a salary, or even if he was, that he was not allowed to do so out of an account labeled "custodial" – do not have any <u>factual</u> allegations in the FAC to support them. There are no account terms, no employment agreements – nothing beyond the bare assertions in the Opposition. Nor is there even the barest hint of a <u>factual</u> allegation that Commerce Bank actually knew of these unpled specifics. Even ignoring *Heilig*'s bar to liability for transfers by an account trustee, this cannot be enough under *Twombly*, *Iqbal* and their progeny to survive a motion to dismiss.

B. <u>**The FAC Fails to Plead Facts to Support the Allegation That Commerce Bank Had Actual Knowledge of Any Fiduciary Duty Owed By Berg to the Individual Investors.**</u>

Even assuming that Plaintiffs' bare allegation of the "custodial" label was sufficient to plead that Berg owed the investors a fiduciary duty – which it is not – Plaintiffs still have failed to plead any facts to support their conclusory allegation that Commerce Bank actually knew of any such duty. As described in the Motion, the most Plaintiffs conceivably have done is to allege that Commerce Bank knew that certain accounts were described as "custodial." Plaintiffs allege that Commerce Bank received emails referring to certain accounts as "custodial" and that some investors wrote checks to "custodial" accounts. But one searches the FAC in vain for a single fact supporting the naked inference that, based on the "custodial" descriptor alone, Commerce Bank knew (a) that Berg was holding money in those accounts as a fiduciary; (b) that Commerce Bank knew the identities of the purported beneficiaries of those funds; (c) that Commerce Bank knew the precise limitations on the uses of those funds; or (d) that Commerce Bank knew that Berg was exceeding or violating those limitations.

As discussed in the Motion, the Bankruptcy Court's opinion in *In re Meridian Asset*

THE COMMERCE BANK OF WASHINGTON, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT - 8

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

SEA_DOCS:1099460.4
Case 12-01767-TWD    Doc 67    Filed 04/30/13    Ent. 04/30/13 15:26:04    Pg. 8 of 13

*Management, Inc.*, 296 B.R. 243 (Bankr. N.D. Fla. 2003), is instructive here. Just as Plaintiffs here have done, the plaintiffs in *Meridian Assets* alleged that the primary tortfeasor (a financial services company) was acting as a fiduciary to its investors, and that the bank was aware of the fiduciary relationship because "the names on the [bank] accounts and instruments [*i.e.*, checks] were indicia of the fiduciary nature and accounts that put the Bank on notice of a fiduciary relationship." 296 B.R. at 263. Indeed, the names of the bank accounts at issue in *Meridian Assets* allegedly included language such as "trust," "fbo," and/or "retirement account." *Id*. at 260. The *Meridian Assets* court rejected such allegations as insufficient and dismissed the plaintiffs' claims, holding that the use of such words in the account names "was not sufficient to indicate that the accounts were fiduciary and that Meridian had fiduciary duty to its investors." *Id*. at 264. The same result should follow here.

C. **The FAC Fails to State a Claim For Aiding and Abetting Fraud.**

Commerce Bank demonstrated in the Motion that the FAC fails to plead facts in support of its claim for aiding and abetting fraud, as instructed by the Court's Order. The Opposition all but concedes the point. As noted in the Motion, and as Plaintiffs now reiterate in the Opposition, Plaintiffs now admit in the FAC that Commerce Bank may <u>not</u> have had "actual knowledge that Berg was running a Ponzi scheme." Opp. at 17. Further, Plaintiffs do not dispute that the only new alleged fact in support of Commerce Bank's purported knowledge of Berg's wrongdoing is fatally vague and deficient – the fax received "in or about 2009" that in fact was sent in July 2010.[6] Opp. at 18. Shifting course, Plaintiffs now argue that Commerce Bank had actual knowledge of Berg's alleged fraud because it knew he was making "false representations" to Plaintiffs in connection with their investments. Opp. at 17 (citing FAC ¶ 5.15). Plaintiffs' argument should be rejected on at least three grounds.

---

[6] Plaintiffs protest that the date of the fax – the only detail about the fax's content on which the FAC is <u>not</u> specific – is a matter "appropriate for discovery," and muse as to "what was known earlier on that same topic?" Opp. at 18 n.10. This misses the point, which is that the FAC never alleges an answer to this question. *Twombly* and *Iqbal* – to say nothing of Rule 9(b) – simply do not allow Plaintiffs to state a claim by means of a rhetorical question, let alone suggest that asking it opens the floodgates to an expensive and wasteful fishing expedition.

THE COMMERCE BANK OF WASHINGTON, N.A.'S REPLY IN
SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT - 9

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939*

SEA_DOCS:1099460.4
Case 12-01767-TWD    Doc 67    Filed 04/30/13    Ent. 04/30/13 15:26:04    Pg. 9 of 13

First, Plaintiffs' allegations – apparently to the effect that Commerce Bank aided and abetted fraud in connection with certain false statements or misrepresentations in offering materials – are fatally vague. Plaintiffs claim generally that the offering materials represented that investor money would be used "solely" to purchase various real-estate related investments, but that such statements were fraudulent because Berg was, in fact, using the money for his own ends. Opp. at 17. Plaintiffs do not identify any particular statement that Commerce Bank ever actually knew to be false; when it was made; to whom; when Commerce Bank received it or discovered it to be false; or any other such facts. Nor do they plead specific facts sufficient to explain why Commerce Bank would have analyzed such statements and then monitored Berg's activities to ensure compliance given the well-settled principle that banks have no duty to do so and are not the guarantors of their customers. *Agape*, 681 F. Supp. 2d at 365. Especially in this light, such pleading falls well short of the particularized facts required by Rule 9(b) in support of such a claim.[7] *See generally* Order at 29.

Second, and in any event, it is well-settled that in claims against banks for aiding and abetting a customer's alleged Ponzi scheme, mere allegations of "red flags" suggesting that impropriety was taking place are insufficient as a matter of law. *Lawrence*, 455 Fed. Appx. at 907; *Agape*, 681 F. Supp. 2d at 363. Even *Lerner*, on which Plaintiffs seek to rely in support of their aiding and abetting breach of fiduciary claim, held that all the various allegations of "red flags" described above were insufficient to allege actual knowledge of the Ponzi operator's fraud. *Lerner*, 459 F.3d at 294. Thus, even if Plaintiffs had alleged particularized facts showing that Commerce Bank actually knew that Berg was making misrepresentations to his investors in offering materials – and they have not – such allegations would not be sufficient.

---

[7] Plaintiffs' failure to allege the timing of any representations in anything other than the most general of terms is particularly troubling here. A representation by Meridian that investor money "would be" used for particular purposes, Opp. at 17, is necessarily forward-looking, not a representation of existing fact. It is entirely unclear whether or how such a forward-looking representation in (for example) 2004 or 2005 could be rendered false *when made* by an alleged misuse of funds in 2006 and 2007 (FAC ¶¶ 5.13.1 – 5.13.4), much less how Commerce Bank could have actually known about it.

THE COMMERCE BANK OF WASHINGTON, N.A.'S REPLY IN
SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT - 10

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

SEA_DOCS:1099460.4
Case 12-01767-TWD    Doc 67    Filed 04/30/13    Ent. 04/30/13 15:26:04    Pg. 10 of 13

Third, the district court's recent opinion in *Wiand v. Wells Fargo Bank*, --- F. Supp. 2d ---, 2013 WL 1401414 (M.D. Fla. Apr. 5, 2013), decided after Commerce Bank filed the instant Motion, is particularly instructive on this point. In *Wiand*, the plaintiff was a court-appointed receiver for a group of hedge funds that had been used by their owner and manager – who had been a customer of the defendant bank – to orchestrate a massive Ponzi scheme. 2013 WL 1401414 at *1. The plaintiff sued the bank for aiding and abetting fraud and breach of fiduciary duty, among other claims, alleging that the defendant actually knew of the customer's misdeeds for several reasons, including but not limited to the fact that: (1) the customer opened "shadow" accounts at the bank in the name of certain entities despite the fact that he did not have authority to act on behalf of those entities; (2) the customer provided false information to the bank when he opened accounts; (3) the accounts reflected "unusual trends and patterns of transfers;" (4) the customer transferred and commingled large amounts of money between accounts, including between individual, nonprofit, and business accounts; (5) the customer's banking activities triggered the bank's fraud alert system; and (6) the bank participated in two investment transactions conducted by the customer. *Id*. at *4. The court dismissed the claims, holding that:

> Plaintiffs alleging aiding-and-abetting liability for a bank's participation in a Ponzi scheme sometimes rely on 'red flags' . . . that should have alerted the bank to potentially unscrupulous activity by its customer. These 'red flags,' however, are insufficient to establish a claim for aiding and abetting because although they may have put the banks on notice that some impropriety may have been taking place, those alleged facts do not create a strong inference of actual knowledge of wrongdoing. As a corollary to that proposition, banks that conduct routine banking services, even for transactions or activities that appear atypical upon review, are not required to investigate the account holder's transactions.

*Id*. at *3 (internal quotations and citations omitted). The same logic requires dismissal here.

**D.  The FAC Fails to Plead Proximate Cause.**

Plaintiffs have not pled facts sufficient to show that any alleged actions by Commerce Bank proximately caused their harm, as they were directed to in the Order. Mot. at 15-16.

THE COMMERCE BANK OF WASHINGTON, N.A.'S REPLY IN
SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT - 11

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

SEA_DOCS:1099460.4
Case 12-01767-TWD    Doc 67    Filed 04/30/13    Ent. 04/30/13 15:26:04    Pg. 11 of 13

Plaintiffs argue in the Opposition that transfers out of the "custodial" accounts caused harm because Plaintiffs received no "economic benefit" for such transfers. Opp. at 14. However, this argument ignores that the FAC has not pled any facts regarding any transfer out of an account labeled "custodial" in the first instance,[8] nor does it allege which investor's funds were so transferred or which investor thus was harmed.[9] Moreover, Plaintiffs baldly assert that "but for Defendant's conduct, Berg's fraud would have been discovered earlier," Opp. at 19, but identify no alleged facts in support of such a theory. As courts in other aiding and abetting cases have routinely held, this cannot pass the *Twombly/Iqbal* test.

## III.
## CONCLUSION

For the reasons stated above, and those discussed in the Motion, the Court should grant the Motion and dismiss Plaintiffs' claims with prejudice.

Dated this 30th day of April, 2013.

> GARVEY SCHUBERT BARER
>
> By  s/David Lieberworth
>   Charles C. Robinson, WSBA # 15394
>   David Lieberworth, WSBA # 9329
>   Tyler Arnold, WSBA # 43129
>   Daniel J. Vecchio, WSBA # 44632
>
>   Attorneys for Defendant The Commerce
>   Bank of Washington, N.A.

---

[8] Plaintiffs concede that the specific transfers they do allege in the FAC were not made from "custodial" accounts, but argue that these transfers are just "examples." Opp. at 16. This is insufficient, as *Twombly* and *Iqbal* require facts supporting Plaintiffs' legal conclusions, not "examples" of alleged wrongdoing in other, non-"custodial" accounts.

[9] To the extent Plaintiffs argue that they suffered "direct economic loss equal to the amounts so transferred," even if they had alleged facts to support such a claim, this raises the specter of double-recovery. The Trustee has filed some sixty or more lawsuits to avoid and recover such transfers from the persons or entities to whom they were made.

THE COMMERCE BANK OF WASHINGTON, N.A.'S REPLY IN
SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT - 12

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939*

SEA_DOCS:1099460.4

Case 12-01767-TWD    Doc 67    Filed 04/30/13    Ent. 04/30/13 15:26:04    Pg. 12 of 13

**CERTIFICATE OF SERVICE**

I hereby certify on April 30, 2013, I caused to be electronically filed the foregoing THE COMMERCE BANK OF WASHINGTON, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT with the Clerk of the Court using the CM/ECF system which, pursuant to Local Rule 5005-1(c)(1), causes parties who are registered ECF participants to be served by electronic means.

Dated this 30th day of April, 2013, at Seattle, Washington.

GARVEY SCHUBERT BARER


By /s/David Lieberworth
    David Lieberworth

THE COMMERCE BANK OF WASHINGTON, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT - 13

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

SEA_DOCS:1099460.4
Case 12-01767-TWD    Doc 67    Filed 04/30/13    Ent. 04/30/13 15:26:04    Pg. 13 of 13